EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ R. ELIZA COLÓN, acusado y apelante.

*Número:* CR-67-104          *Resuelto:* 25 de enero de 1968

*E. L. Belén Trujillo,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Se cuestiona en este caso (1) la suficiencia de la prueba del estado de embriaguez del apelante, José R. Eliza Colón, que diera lugar a su convicción por la infracción a la Sec. 5-801 de la Ley de Vehículos y Tránsito (9 L.P.R.A. sec. 1041(a)); (2) el no permitir que el médico perito diese su opinión sobre el estado en que se encontraba una persona que da 0.12 contenido de alcohol por peso en la sangre y en cuanto a su criterio de lo que es o no es una pregunta hipotética; y (3) la pena de multa de $200 que le fuera impuesta o en su defecto hasta 90 días de cárcel y la suspensión de la licencia por el término de un año.

Errores 1 y 3—La prueba testimonial sobre el estado de embriaguez del apelante al ocurrir un choque entre el vehículo por él conducido y otro conducido por Miguel Ángel Sierra en la intersección de la Avenida Laurel, de Lomas Verdes, por donde se dirigía este último, y la calle Bellísima de donde salió a cruzar la avenida el apelante, fue la siguiente:

(a) Testimonio de Miguel Ángel Sierra: Luego del impacto ambos salieron de sus vehículos para hablar; notó que el apelante estaba borracho porque "El se tambaleaba y estaba nervioso . . . hablaba con cierto carácter fuerte . . . no pude percibir el olor [el aliento del apelante] porque yo no puedo percibir olor porque tengo un defecto. . . ." En contrainterrogatorio dijo que:

LIC. J. MUÑIZ:

"P. ¿Cómo estaba en condición allí, dónde ocurrió el accidente, el suelo, cómo estaba?

R. Honradamente hablando, la dirección que él venía, habían unas hondonadas, como unas hondonadas que hacen así, y entonces en donde él paró el automóvil, este, el terreno, la condición de la carretera eran un poco pedregosa y con . . .

HON. JUEZ:

Un poco qué?

R. Como pedregosa y como hoyos.

LIC. J. MUÑIZ:

P. Es decir, estaban arreglando la carretera allí.

R. Todavía no habían empezado . . .

P. Pero estaba pedregosa?

R. No estaba en buenas condiciones.

P. De manera que una persona podía caminar normal por esa carretera?

R. Bueno, dependiendo, tal vez de la condición física del individuo.

P. Pero podía caminar una persona por la carretera, estaba en una forma que usted dice llena de hoyos?

R. Bueno, sí, puedo hablarle? yo podía caminar en condiciones.

P. Y la piedras que estaba allí, y los hoyos?

R. Bueno, yo podía caminar en condiciones, puede que otro individuo no.

P. Pero no podía caminar acá como camina allí?

R. Desde luego no, tengo que tener más cuidado.

P. Allí es más difícil caminar que ahí, o allí?

R. Bueno, es un sitio que la persona tiene que tomar medidas para no caerse, es un sitio que hay piedras, hoyos . . .

P. Allí no era así?

R. No, es más difícil."

Lic. J. Muñiz:

P. Bien ahora, usted, a preguntas de la Honorable Fiscal, usted declaró que usted observó que él se tambaleaba?

R. Sí.

P. No pudo notarle olor a nada?

R. No.

P. O sea, que no puede asegurar al Tribunal que oliera a licor?

R. Porque no pude apreciar eso.

P. ¿Y que estaba nervioso?

R. Eso sí.

P. Y a base de esas dos observaciones es que usted se basa que él estaba en estado de embriaguez?

R. Correcto.

P. En esas dos observaciones exclusivamente, eso es correcto?

R. Digo, a base de esas dos observaciones es que yo hice mi apreciación.

P. Mire, señor, si allí en ese sitio una persona que va de un vehículo, que se baja de un vehículo y la carretera estaba llena de hoyos, da la impresión que se tambalee, podría suceder eso?

R. Podría suceder.

P. Tuvo usted, además de ese día y además en otras ocasiones que usted ha tenido oportunidad de conversar con el señor Eliza Colón o hablar con él aparte de la discusión de esa noche, etc., pudo usted aprecier [sic] cuál es el carácter del señor Eliza Colón?"

.    .    .    .    .    .    .    .    .

R. En mi concepto, el carácter del señor en aquel momento, verdad, fue sumamente nervioso y fuerte, no al extremo de llegar a la agresión, pero sí era como podía decir, revelado con cierto carácter de coraje.

P. Pero en ningún momento le faltó el respeto?

R. En palabrerías obscenas eso no se vio.

P. Solamente nervioso y defendió su tesis de él al discutir con usted porque usted, como que usted era el que le había dado, pero no lo trató de palabras obscenas?

R. En cuanto a eso no."

(b) Testimonio de Manuela Pereira, persona que acompañaba a Sierra y sufrió lesiones con motivo del accidente:

"P. Usted pudo observar al acusado?

R. Sí.

P. Notó algo en él?

R. Yo noté que estaba borracho.

P. Relate aquí al Honorable Magistrado su . . . en que usted estima que . . .

R. Yo lo noté que gageaba y se tambaleaba, no se paraba derecho, sino que se tambaleaba.

P. Qué más notó usted?

R. Tenía los ojos colorao.

P. Y cómo hablaba?

R. El hablaba tan ligero, de una manera, en una forma demasiado de . . . se veía como verdad, deje ver, esto . . . que hablaba mal.

P. Con coraje o . . .

R. Con coraje."

En contrainterrogatorio dijo que aunque el apelante tenía los ojos colorados en el momento del juicio "pero los tiene derechos ahora" y que en ese momento no estaba en estado de embriaguez.

(c) Testimonio de Francisco Pizarro, quien estaba parado cerca de lugar del accidente y lo presenció:

"R. . . . yo arranqué a correr a ver que era lo que le pasaba, y yo le dije, qué le pasa, señora, y a usted, señor, y vino aquel señor [el apelante] bravísimo, de allá para acá, y estaba metido en par de palos, sabe . . .

P. Estaba metido en palos?

R. Yo le puedo decir, sabe, estaba tambaleándose para acá y esto y lo otro."

(d) Testimonio de Tomás E. Padilla, policía estatal que llegó al lugar del accidente poco después de ocurrido:

"P. Usted pudo observar al señor Eliza Colón?

R. Sí, y al observar al señor José R. Eliza Colón yo pude notar que se encontraba en estado de embriaguez.

P. Por qué dice usted que estaba en estado de embriaguez?

R. Se encontraba en estado de embriaguez porque el señor José R. Eliza Colón tambaleaba al andar, al hablar lo hacía de una manera como si la lengua le pesara, expedía aliento a alcohol, la vista se le notaba rojiza y el cabello lo tenía desordenado, el pelo.

P. En aquel momento usted requirió de él algo?

R. Yo le manifesté a él que si en el sitio del accidente, tenía alguna persona que le manejara el automóvil hasta el cuartel de la Policía, ya que éste él, se encontraba en estado de embriaguez y no podía conducir el automóvil hasta el cuartel de Bayamón.

P. Y qué hizo él?

R. Bueno, él se fue conmigo en la patrulla."

Añadió que estuvieron en el cuartel desde las nueve y media, unos 20 minutos a media hora. Entonces fueron al Centro de Salud de Bayamón; como no quería sacarse muestra de sangre se trató de obtener una de orina, pero al tratar y no poder dar la muestra durante más de una hora, se dejó tomar la de sangre como a eso de las 12:30 de la noche. De ahí lo llevaron a presencia del juez de paz. Dijo que:

"R. Fue la conducta del señor [el apelante] violenta en algunas ocasiones, algunas veces se mantenía en silencio, y mirando desesperado, se desesperaba, de momento salía hablando, desde el momento que ocurrió el accidente esa fue la conducta de él, porque al momento de preguntarle, de investigar el accidente, el Policía Martínez le preguntó a él que si él se había detenido en el Pare, verdad, para saber, más o menos, cómo había ocurrido el accidente, a lo que él dijo que el Policía Martínez y la Policía estaba prejuiciada en contra de él, que hiciera lo que lo que hiciera, ya la Policía estaba prejuiciada en contra de él."

En contrainterrogatorio dijo que el tener el pelo en desorden podría ser una característica de estar en estado de embriaguez; que el olor a licor puede o no puede ser otra característica de dicho estado y que el tambalearse muchas veces puede ser. En cuanto a los ojos del apelante, el contrainterrogatorio fue el siguiente:

"P. Tenga la bondad, acusado . . . Mírele los ojos al señor acusado, cómo los tiene?

R. Los tiene un poco rojisos [*sic*].

P. Y ahora, este señor está en estado de embriaguez?

R. No, señor, ahora no.

P. Ahora no?

R. No.

P. Pero tiene los ojos rojizos?

R. Los tiene algo, no como aquella noche.

P. Pero usted no dice que los tiene rojizos?

R. Un poco.

P. Un poco rojizos?

R. Un poco rojizos.

P. De manera que es una cuestión de grado el color rojizo, de manera que más rojizos es mayor estado de embriaguez?

R. Puede ser."

En cuanto a la actitud del apelante, testificó el policía, en contrainterrogatorio, así:

"P. Este señor se dirigió a usted en forma obscena, en palabras obscenas, le dirigió en algún momento alguna palabra obscena?

R. En ningún momento él se dirigió a mí en palabras obscenas, pero sí en forma violenta.

P. Mire, yo le sigo preguntando . . . Palabras obscenas no le dirigió en ningún momento?

R. Ninguna, en ningún momento.

P. Este señor en algún momento le agredió a usted físicamente?

R. Físicamente no.

P. Nunca lo agredió?

R. No, nunca me agredió.

P. De manera que físicamente ni de palabras obscenas lo maltrató?

R. No, señor.

P. Usted declaró que él estaba en forma violenta?

R. Cierto.

P. O sea, lo que usted quiere decir cuando dice forma violenta, incluye dos cosas, es que le dijera palabras obscenas y que lo agrediera a usted, eso es lo que incluye, la definición de usted de violencia están incluidas, o sea, no está contenida de . . .

R. Bueno . . . .

P. La palabra violencia, usted dijo que él había actuado violentamente?

R. Violentamente.

P. Usted me dice a mí que él no habló en palabras obscenas ni lo agredió, o sea, que él no lo maltrató de hechos ni de palabras? ¿Qué es para usted la palabra violencia?

R. El no usó en contra mía palabras obscenas, pero me desafió en un tono de voz que era ofensivo.

P. Mire, señor, mire si este señor, allí, lo que reclamó en el accidente era que la culpa del accidente no era de él que era del otro, si él alegó eso allí?

R. El alegó eso desde que hice yo la investigación.

P. Cómo él mantuvo esa tesis, pasivamente, con convicción y fuerzas, en qué forma mantuvo esa tesis?

R. Con convicción y fuerzas.

P. Es decir, si yo mantengo y sostengo, y lo digo con convicción y fuerzas, eso es ser violento?

R. A la violencia que yo me estoy refiriendo . . . ."

(e) Por la defensa testificó el Dr. Fragoso, quien le tomó la muestra de sangre, el examen químico de la cual dio cero punto doce por ciento de alcohol en la sangre. Este testigo declaró que:

"R. En lo que se refiere a conducta, yo no tengo quejas contra él, ya que en ningún momento él no [sic] faltó el respeto, se condujo de una manera buena.

P. Doctor, pudo usted notar en él algo anormal?

R. Nada de particular.

P. Usted diría que su conducta fue una conducta normal y una conducta anormal?

R. Normal."

Se sostuvieron las objeciones del fiscal a las siguientes preguntas que la defensa hiciera a este testigo:

"P. Dígame, doctor, en su carácter de médico y según sus conocimientos científicos, qué opinión usted tiene de una persona que se le extrae una muestra de sangre y luego del examen químico da cero punto doce por ciento de alcohol en la sangre . . .

. . . . . . . .

P. Dígame, doctor, puede usted explicarle a este Honorable Tribunal, la apreciación que usted tiene sobre por ciento de alcohol en la sangre?

· · · · · · · ·

Doctor, cuál sería su opinión, sobre un por ciento de sangre menor a quince por ciento?

· · · · · · · ·

P. Doctor, Si una persona, luego de recibir un examen químico, tiene una muestra de sangre que da punto quince por ciento, cuál será, sería su interpretación médica de ese porcentaje?"

El tribunal de instancia dictaminó, al sostener estas objeciones, que si se trataba de una pregunta hipotética, "vamos a hacer la pregunta como se hace la pregunta hipotética."

(f) Testificó por la defensa, Miguel Martínez Bonaparte, quien acompañaba al apelante en su vehículo al ocurrir el accidente. Dijo que luego del accidente, Sierra le dijo al apelante que le iba a arreglar su carro y en eso llegó la policía y arrestó y se llevó al apelante; que la conducta de éste fue buena; que no se tambaleaba. En contrainterrogatorio dijo que el apelante y el testigo estuvieron en casa de éste desde las 4:30 ó 5:00 de la tarde hasta las ocho a ocho y media y en ese intervalo se bebieron cuatro o cinco botellas de cerveza.

(g) El apelante testificó en su propia defensa que al llegar la policía lo culpó por el accidente y:

"Yo le alegué a él, le dije que yo no tenía la culpa porque él no estaba allí para decir que yo tenía la culpa, porque él me dijo que él tenía el derecho de paso, porque era la avenida principal, y que yo no tenía que ir por allí, y yo le dije que yo iba para el garage y tenía que cruzar la avenida, y entonces el Policía me dijo a mí que yo estaba borracho, yo le dije que lo que pasaba era que él estaba prejuiciado ya en contra mía, que si él había venido en esa actitud, aquí no venía a acusarme correctamente porque él no sabía nada de lo que había pasado allí, y entonces él llamó al Policía Padilla y entonces dijo que yo estaba borracho y Padilla le dijo que inmediatamente le entregara la llave de mi carro y me monté con el Policía en la patrulla, creo que otro Policía llevó el carro al cuartel."

La referida Sec. 5-801, en su apartado (b)(2), dispone que: "Si al momento del análisis se hallare en la sangre del acusado más de cinco (5) centésimas de uno por ciento, pero menor de quince (15) centésimas de uno (1) por ciento, por peso de alcohol, tal prueba no constituirá base para presumir que el acusado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba podrá ser considerada conjuntamente con otra evidencia competente para determinar la culpabilidad o inocencia del acusado."

En *Pueblo* v. *Galleti Rodríguez*, 88 D.P.R. 284, 287 (1963), se hizo referencia, sin comentario, al testimonio de un químico al efecto de que "se ha establecido un punto que con 0.15 una persona está en estado de embriaguez. De ahí para abajo está la zona oscura que pueda la persona estar o no en estado de embriaguez." Dijo que entonces eso depende de las personas que lo vieron.

El hecho de si el apelante estaba alterado o sosegado y de si profirió o no palabras obscenas no es determinante —puede ser uno de los factores a tomar en consideración. *Pueblo* v. *Díaz Torres*, 89 D.P.R. 720 (1963).

■ Prueba de que una persona aparece en estado de atolondramiento, que hablaba en forma incoherente, olía a licor y andaba dando tumbos es suficiente, además del examen químico de la sangre, para establecer su estado de embriaguez. *Pueblo* v. *Santos Vázquez*, 89 D.P.R. 88 (1963).

En *Pueblo* v. *Vélez Ruiz*, 89 D.P.R. 53 (1963), dijimos que cuando hemos revocado una convicción por el delito de conducir en estado de embriaguez, han mediado circunstancias de excepción.

■ En *Pueblo* v. *López Rodríguez*, 88 D.P.R. 474 (1963), dijimos en un caso como el que nos ocupa, que cuando la prueba es conflictiva y apareciendo la de cargo suficiente para sostener la convicción, no intervendremos con la sana discreción del juez sentenciador al apreciar la prueba ni sustituiremos nuestro criterio por el de aquél a menos que exis-

tan circunstancias demostrativas de que el tribunal de instancia incurrió en manifiesto error, prejuicio o parcialidad.

Se diferencia este caso del de *Galleti*, supra, porque en éste la prueba del estado de embriaguez es de mayor peso y más precisa, no tan sólo con respecto a la condición en que se encontraba el apelante al ocurrir el accidente y luego en el hospital y ante el juez de paz, sino por el hecho de que el apelante había estado ingiriendo cerveza durante unas cuatro horas antes del accidente.

■ De lo expuesto, concluimos que hubo suficiente prueba para justificar que el tribunal de instancia determinase que al ocurrir el accidente, el apelante conducía su vehículo en estado de embriaguez, siendo el grado de la prueba tal que no nos sentimos justificados a intervenir con la apreciación que de la misma hizo el tribunal de instancia no tan sólo en cuanto a la convicción en sí, sino también con respecto a la pena impuesta.

■ Segundo Error: El apuntamiento relacionado con la no admisión de preguntas hipotéticas no tiene mérito pues las preguntas en cuestión no eran en verdad hipotéticas pues no se estableció previamente una base factual para las mismas como, por ejemplo, el estado o condición física y emocional de la persona, su edad, peso, y cuándo y qué cantidad de comida había ingerido.

*Por lo tanto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 8 de junio de 1965.*