EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR E. RIVERA ARROYO, acusado y apelante.

*Número:* CR-70-137    *Resuelto:* 14 de junio de 1971

*Luis A. Archilla Laugier,* abogado del apelante; *Gilberto Gierbolini, Procurador General, Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante, Víctor E. Rivera Arroyo, fue acusado y convicto de conducir un vehículo de motor en estado de embriaguez (Sec. 5-801 de la Ley Núm. 141 de 20 de julio de 1960—9 L.P.R.A. sec. 1041). Se le impuso una multa de $150 ó 15 días de cárcel y se le suspendió su licencia de conducir por el término de un año. Más tarde, el juez sentenciador enmendó la sentencia para dejar sin efecto la suspensión adicional de ocho meses de la licencia de conducir por negarse injustificadamente a someterse al análisis químico, en vista de lo que resolvimos en *Pueblo* v. *Ortega Otero*, 97 D.P.R. 477 (1969).

La prueba de cargo consistió del testimonio de Dionisio Rosas González y el del policía Luis Daniel Rivera. Explicó aquél que al tomar una semicurva en una carretera de Guaynabo notó que venía un Volkswagen conducido por el apelante quien se detuvo a la orilla de la carretera y al arrancar nuevamente impactó el vehículo del testigo por el guardalodo izquierdo delantero; que *el apelante tenía los ojos colorados "pero no estaba borracho . . . estaba medio alterado . . . no quería hacerse culpable ni nada . . . . Estábamos discutiendo . . . como de 15 a 20 minutos . . . en eso llegó el policía."* (Énfasis nuestro.)

El *policía* Rivera *testificó* que cuando él llegó al lugar de los hechos procedió a entrevistarse con los conductores de los vehículos accidentados; que "al yo hablar con el conductor del Volkswagen [el apelante] *noté que le salía un fuerte olor a licor . . .* y entonces *me hablaba entrecortado,* por lo que pude notar que estaba borracho." (Énfasis nuestro.) Al entrevistarlo, dijo que estaba a una distancia más o menos como de la silla del testigo a la del juez sentenciador en el tribunal. Testificó también que le dijo que "le iba a someter un caso por estado de embriaguez y le hice las advertencias de rigor . . . que si quería sacarse la sangre u orina voluntariamente . . . . El se negó . . . lo monté en la patrulla . . . . Para llevarlo al hospital a ver si en el transcurso él se decidía

a sacársela . . . se negó" y entonces le dije que, "de negarse, al someterse el caso el magistrado le podría retener la licencia hasta el día del juicio, y si salía inocente o culpable, el Magistrado le podría suspender la licencia por dos años también . . . procedí a someter el caso a la Sala de Investigaciones." En contrainterrogatorio testificó que *"Yo le dije que me mostrara la licencia de conducir y la del vehículo, me la dio"* que la sacó *"Del bolsillo, supongo . . . también él me informó a mí* que *había impactado al carro del joven ese porque* el joven *ese creo, creo que y que le había puesto las luces largas o algo así . . . . El me dijo la dirección* [de donde él vivía]." (Énfasis nuestro.)

El apelante testificó en su defensa que "Ese día lo que pasó es que fuí a Corozal, a ver a la madre mía que estaba sola, y entonces de regreso, como era sábado y en esos días estaba el tráfico congestionado, y como vivo en Río Piedras, tuve que usar esa carretera, y en el momento de los hechos lo que sucedió fue que un carro venía detrás de mí, quiso pasar, yo paré y pasó, y entonces cuando estoy en una semicurva hacia adelante, un carro, me enfocó y chocamos . . . entonces nos apeamos los dos, yo le pregunté que si había algún problema o algo, y él me dijo que no había pasado nada, y yo me puse un poco nervioso, además yo estaba, yo tenía la mujer acá, y me temblaban las manos como me tiemblan ahora y estabamos hablando, y yo le dije que no se ocupara, que arregláramos todo, y él me dijo no, y *en ese momento llegó el guardia, me vio y me dice 'si tú lo que estás es borracho, vente, vamos a llevarte"*, y me puse más nervioso, la mujer sola por acá, nadie le quiso informar, y me puse más nervioso y entonces me llevaron." (Énfasis nuestro.) Negó que el policía le hiciera advertencia alguna. Dijo que del lugar de los hechos el policía lo llevó al cuartel y luego donde un magistrado. *Preguntado si siempre tiene la vista así rojiza,* contestó que "si yo lo que hago es leer casos y más casos". En *contrainterrogatorio negó que hubiera ingerido* bebida

*alcohólica alguna; que "si voy a estudiar por la noche no podía dármelo [un palo] . . . sería ilógico"*; que el policía al llegar le dijo "si tú lo que estás es borracho"; admitió que lo llevaron donde un médico; que "le hablaron de la sangre" y que allí negó que estuviera borracho. (Énfasis nuestro.)

No hubo prueba de que el apelante observara una conducta anti-social.

■ La prueba en este caso es casi idéntica a la prueba aducida en *Pueblo* v. *Zalduondo Fontánez,* 89 D.P.R. 64, 67, 68 (1963) y menos robusta que la prueba en *Pueblo* v. *Díaz Just,* 97 D.P.R. 59, 63 (1969), y *Pueblo* v. *Galleti Rodríguez,* 88 D.P.R. 284, 286, 287 (1963).([1]) Véase, además, *Pueblo* v. *Toro Rosas,* 89 D.P.R. 169, 175 (1963). En estos casos revocamos la sentencia de culpabilidad porque la prueba no estableció la culpabilidad más allá de duda razonable. Por esta misma razón concluimos que la sentencia en este caso debe ser revocada.

■ Estimamos conveniente aclarar lo relativo a las dos razones por las cuales, bajo la Ley de Vehículos y Tránsito, procede la suspensión de la licencia de conducir en estos casos. Las penalidades prescritas por la ley para castigar el delito de conducir un vehículo de motor bajo los efectos de bebidas embriagantes están provistas en la Sec. 5-802 de la ley, 9 L.P.R.A. sec. 1042. El apartado (a) de esa sección dispone para multa o cárcel, o ambas penas, por la primera infracción. Los apartados (b) y (c) de dicha sección disponen para otras penalidades cuando concurren otras circunstancias.

El apartado (d) de dicha Sec. 5-802 de la ley, 9 L.P.R.A. sec. 1042(d), dispone en forma *mandatoria* que en caso de una primera convicción además de las penalidades antes

---

([1]) Compárese la prueba aducida en *Galleti,* supra, con la prueba presentada en *Pueblo* v. *Eliza Colón,* 95 D.P.R. 670 (1968), en que confirmamos la convicción por conducir en estado de embriaguez.

indicadas, el tribunal decretará la suspensión de la licencia de conducir por un período que no podrá ser menor de un año ni mayor de dos. En caso de reincidencia la revocación será permanente. También ese apartado (d) provee para cuando la persona no es residente.

■ En otra sección de la ley, la 5-804, 9 L.P.R.A. sec. 1044, se provee el procedimiento que habrá de observarse cuando la persona arrestada se negare a someterse al análisis químico. Provee el apartado (c) de esa sección que en el acto del juicio, si el magistrado determina que el acusado no estuvo justificado a negarse a someterse al análisis químico a que se refiere la Sec. 5-803 de la ley, el magistrado *deberá* disponer la suspensión de la licencia por un término no mayor de dos años.

■ Lo antes descrito comprende dos situaciones distintas. La primera se refiere a la comisión del delito de conducir un vehículo de motor bajo los efectos de bebidas embriagantes. La segunda se contrae a determinar si el acusado estuvo justificado o no al negarse a someterse al análisis químico. Por eso es posible que un acusado sea convicto y condenado por la primera y no por la segunda, y a la inversa, es posible que salga absuelto del delito de conducir bajo la influencia de bebidas embriagantes y que sin embargo se le suspenda la licencia por encontrar el magistrado que el acusado no estuvo justificado al negarse a someterse al examen químico. *Pueblo* v. *Otero Valle*, 89 D.P.R. 73, 80–81 (1963).

*Por los fundamentos previamente indicados debe revocarse la sentencia dictada en este caso y absolverse al apelante.*

El Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Hernández Matos y Pérez Pimentel no intervinieron.