# 2009 DTA 132

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE UTUADO
PANEL V**

EL PUEBLO DE PUERTO RICO
Apelado

v.

WALLY E. TORRES TORRES
Apelante

Núm. KLAN-09-00144

San Juan, Puerto Rico, a 18 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
la Juez Colom García y el Juez Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

El Sr. Wally E. Torres Torres (apelante o Torres) presentó recurso de apelación el 21 de abril de 2009. Solicita revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sala de Adjuntas (TPI), el 30 de enero de 2009. Mediante la misma se emitió en su contra fallo de culpabilidad por infracción al Art. 7.02 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. § 5202, y se le sentenció a la pena de quinientos dólares ($500) de multa, las costas del proceso, quince (15) días de cárcel y suspensión de licencia de conducir por seis meses. Además se le impuso el pago de la pena especial de cien dólares ($100).

Por los fundamentos que a continuación exponemos, se confirma la sentencia apelada.

### I

El Apelante fue acusado del delito menos grave de conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Según la denuncia presentada el 9 de octubre de 2008, la prueba establecida durante la vista y la Exposición Narrativa Presentada por las Partes (E.N.E.P.) el 25 de junio de 2009, el apelante se encontraba conduciendo un vehículo Jeep Suzuki color blanco por la carretera 123 de Adjuntas a las 7:00pm. En esa misma hora, el agente Manuel Avilés, acompañado por el agente Santiago, agentes de la Policía de Puerto Rico, se encontraban patrullando en esa carretera y se percataron que el referido vehículo estaba utilizando la vía pública desprovisto de luces posteriores y delanteras. Con el propósito de detenerlo, los agentes se acercaron al vehículo y le activaron la sirena y el biombo de la patrulla. El vehículo continuó su marcha hasta que luego de varios toques de luces de biombo y sirena, el vehículo se arrimó hacia la orilla de la carretera y se detuvo abruptamente sin poner las luces de señales. Al intervenir con el Sr. Torres, el agente Avilés le preguntó que si le pasaba algo, ya que estaba conduciendo sin luces en una zona oscura. El Sr. Torres no contestó, por lo que el agente Avilés le explicó que lo detuvo porque estaba conduciendo sin las luces conductoras. Ello así, el apelante rompió su silencio para expresar que el Jeep tenía un corto de circuito. En aquel instante, el agente Avilés percibió en Torres un fuerte olor a alcohol. Al pedirle los documentos de rigor, el Sr. Torres se encontraba nervioso y se le cayeron todos los papeles en el asiento del pasajero. El agente Avilés le ordenó al apelante que se bajara de vehículo y lo observó tambalearse mientras le dio la vuelta a su vehículo para recoger los papeles que se le habían caído por el lado del pasajero. Basado en su experiencia como oficial de la Policía, el agente Avilés llegó a la conclusión de que el Sr. Torres se encontraba ebrio, por lo que procedió a brindarle las advertencias de ley y luego lo arrestó. El apelante fue trasladado al cuartel de Adjuntas y sometido a una prueba de alcoholemia en la cual arrojó un resultado de 0.191% de alcohol en su organismo. **[1]**

Estos acontecimientos dieron lugar a la presentación de denuncias por conducir un vehículo de motor sin estar autorizado en Ley y bajo los efectos de bebidas embriagantes, delitos menos graves tipificados en los Art. 3.23 y Art. 7.02 de la Ley Núm. 22 del 7 de enero de 2000, según enmendada, 9 L.P.R.A. § 5073 y 5202. El agente de la policía expidió dos multas administrativas en contra del apelante, a saber: la primera por conducir sin luces en la noche, y la segunda por no poner señales al intercambiar carriles.

Transcurridos los incidentes procesales de rigor, el TPI evaluó la prueba presentada en el caso y declaró culpable al apelante del cargo que pesaba en su contra.

Insatisfecho con el dictamen en su contra, el apelante acude ante nos y argumenta que el TPI cometió los siguientes errores:

"Cometió error el Tribunal de Instancia al declarar culpable al apelante cuando la intervención fue sin motivos fundados.

Cometió error el Tribunal de Instancia al declarar culpable al apelante, cuando las pruebas obtenidas fueron el resultado de una intervención ilegal al no'existir motivos fundados.

Cometió error el Tribunal de Instancia al declarar culpable al apelante, cuando el agente que intervino declaró que sus motivos fundados eran el olor a alcohol y si estaba ebrio o no el acusado, eso lo determinaba la máquina (intolyzer 5000).

Cometió error el Tribunal de Instancia al limitar el derecho del apelante a contrainterrogar sobre otras partes pertinentes de documentos presentados por el Ministerio Público."

Contando con el beneficio de la comparecencia de ambas partes, procedemos a exponer el derecho aplicable.

## II

**Exposición y Análisis**

El Artículo 7.01 de la Ley de Vehículos y Tránsito establece que "[c]onstituye la posición oficial y política pública del Gobierno de Puerto Rico que el manejo de vehículos de motor en las vías públicas bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, constituye una amenaza de primer orden a la seguridad pública". 9 L.P.R.A § 5201. En virtud de ello, dispone que "será ilegal que cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, conduzca o haga funcionar cualquier vehículo de motor". *Id.*

Por su parte, el Artículo 7.02 de la aludida Ley preceptúa que en cualquier proceso criminal que se lleve a cabo por infracción al Artículo 7.01, *supra*, la concentración o nivel de alcohol en la sangre del conductor al momento en que cometió la alegada infracción, constituirá razón suficiente para sostener una convicción, 9 L.P.R. A. § 5202. Así, el mencionado cuerpo legal establece como medida valorativa de lo que implica estar bajo "los efectos de bebidas embriagantes" el poseer un nivel o concentración igual o mayor a ocho (8) centésimas del uno (1) por ciento (0.08%) de contenido de alcohol en la sangre, según surja de un análisis químico o físico de sangre o aliento. 9 L.P.R.A. § 5202 (a).

Recientemente, el Tribunal Supremo, respecto al alcance de esta norma, efectuó un análisis minucioso de los postulados estatutarios incorporados en la Ley de Vehículos y Tránsito, *supra*, y concluyó que la anterior medida de alcohol en la sangre, no sólo se vislumbra como un elemento medular probatorio, sino que configura causa suficiente para colegir que la persona se encuentra bajo los efectos de bebidas embriagantes. *Pueblo v. Figueroa Pomales*, 172 D.P.R. ___ (2007); **2007 JTS 179**, 24. Bajo esos términos, se le provee al Estado una base justificada para iniciar un proceso penal en contra del alegado infractor. Sobre este particular, también nuestro Tribunal Supremo ha resuelto que el hecho de que un conductor expida olor a alcohol, sumado a un resultado positivo en cualquier prueba suministrada a esos efectos, es evidencia suficiente para establecer su estado de embriaguez. *Pueblo v. Eliza Colón*, 95 D.P.R. 670, 679 (1968).

Con el beneficio de las consideraciones doctrinales expuestas, pasamos a disponer del señalamiento de error

planteado ante nuestra consideración.

La Ley de Vehículos y Tránsito, 2000, dispone en la sección 5209, 9 L.P.R.A. 5209 que:

"Se considerará que toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo de motor habrá prestado su consentimiento a someterse a un análisis químico de su aliento, así como a una prueba inicial del aliento a ser practicada en el lugar de la detención por el agente del orden público o cualquier otro funcionario autorizado por ley."

Con relación a esos procedimientos, se seguirán las siguientes normas, en lo pertinente:

"a) la persona se someterá al análisis que determine el oficial del orden público que realice la intervención;

b)...

c) El agente del orden público deberá requerirle a cualquier conductor que se someta a cualquier análisis químico cuando habiendo sido detenido por razón de una posible infracción a la ley, existieren motivos fundados para creer que conducía bajo los efectos de bebidas embriagantes;

d) ...

e) Cualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo un vehículo de motor que se someta a una prueba inicial de aliento o prueba a ser practicada en el lugar de la detención, si dicho agente tiene motivo fundado para sospechar que la persona ha ingerido alcohol.

f) Si el resultado de la prueba inicial del aliento indicare una posible concentración de ocho (8) centésimas (0.08) o más del uno por ciento (1%) de alcohol por volumen, el agente del orden público le podrá requerir al conductor que se someta a un análisis posterior, el resultado del mismo podrá ser utilizado para demostrar que la persona ha estado conduciendo en violación a las secs. 5201 a 5209 del Título 9 de las Leyes de Puerto Rico Anotadas."

En adición a los estatutos anteriormente citados, la causa ante nos exige que consideremos las disposiciones de la Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, donde se establece que:

"Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente:

(a) Cuanto tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad."

Al interpretar esta regla, el Tribunal Supremo ha enunciado que el agente del orden público que realiza un arresto sin orden judicial previa debe conocer o estar informado de hechos concretos que razonablemente apunten a la comisión de un delito. *Pueblo v. Colón Bernier*, 148 D.P.R. 135 (1999). Para determinar si un funcionario tuvo motivos fundados para creer que la persona a ser arrestada ha cometido un delito en su presencia, la conducta del funcionario o agente del orden público ha de ser juzgada a base de la apreciación que haría una persona

prudente y razonable de las circunstancias presentes. *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972); *Cepero Rivera v. Tribunal Superior*, 93 D.P.R. 245 (1966).

Motivos fundados para creer que la persona arrestada ha cometido un delito grave, por el cual se le arresta, consiste en la posesión de aquella información y conocimiento que llevan a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, *Pueblo v. Cabrera Cepeda*, 92 D.P.R. 70 (1965); y ello independientemente de que luego se establezca o no la comisión del delito. *Pueblo v. Martínez Torres*, 120 D.P.R. 496, a la pág. 504; *Pueblo v. González Rivera*, 100 D.P.R. 651, 654-655 (1972). Sobre el concepto de motivos fundados, nuestro Tribunal Supremo en *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 353 (1997), expresó que dicha frase es sinónimo de causa probable, término utilizado en el contexto de la expedición de una orden de arresto. En nuestra jurisdicción, la existencia de motivos fundados se determina a base de criterios de probabilidad y razonabilidad. Lo importante es que el agente que efectúa un arresto y registro sin orden judicial previa, debe tener al momento de hacerlo base razonable para creer que se está violando o se iba a violar la ley. Esto es, si se desprende de la totalidad de las circunstancias, que una persona prudente y razonable creería que se ha cometido un delito o se va a cometer. *Pueblo v. Ortiz Alvarado*, 135 D.P.R. 41 (1994).

En la determinación de si en un caso en específico existen motivos fundados que justifiquen el arresto de un sospechoso sin orden judicial previa, por haber cometido un delito en presencia de un agente del orden público, el Tribunal debe tomar en cuenta que cada delito tiene unas características externas, una manera de realizarse, que lo proyectan visualmente, tipifican las circunstancias delictivas y dirigen el raciocinio hacia la concreción de motivos fundados para el arresto. *Pueblo ex rel. E.P.P.*, 108 D.P.R. 99 (1978).

En sus primeros tres señalamientos de errores, el señor Torres, en esencia, plantea que la Policía de Puerto Rico no tenía motivos fundados para detenerlo, ya que "el agente que intervino no [lo] sometió a pruebas de coordinación para ver si sus reacciones estaban afectadas por el efecto de alcohol" y que el aliento de alcohol no constituye motivos fundados, pues "eso lo determina el intoxilyzer". (Escrito del apelante, págs. 7-8).

En el presente caso, la detención del vehículo del peticionario se produjo, según el testimonio del agente interventor, por dos infracciones de tránsito cometidas en su presencia. Dado el hecho de que la Ley Núm. 22, *supra*, faculta expresamente al agente para realizar un arresto y una posterior administración de la prueba de alcohol en aquellos casos en que, una vez detenido un automóvil debido a una infracción de tránsito, existan motivos fundados para creer que la persona conducía bajo los efectos de bebidas embriagantes, quedaba de parte del apelante inquirir con hechos particulares y fundamentos específicos los motivos que tuvo dicho funcionario para detenerle. En cuanto a ello, el peticionario se limita a argumentar que si la única razón que tenía la policía para detenerle era la embriaguez, entonces su detención había sido ilegal debido a que la corroboración del nivel de alcohol en su sangre solamente pudo determinarse luego con la prueba de aliento (Escrito de apelación, p.7). Ante tal argumentación, no podemos perder de perspectiva que según los hechos probados y estipulados por ambas partes en esta causa, la intervención inicial de la policía con el apelante se fundamentó en que éste cometió dos infracciones a la Ley de Tránsito y posteriormente se percató del olor a alcohol que expedía el apelante, *supra*, y estos hechos anteriores en nada suprimen los motivos fundados del agente de la policía que no sólo procedió a aplicar las infracciones administrativas, sino que además, debido al olor a alcohol que expedía el apelante y su comportamiento al bajarse tambaleante del vehículo, confirmó que el apelante había cometido un tercer delito: conducir un vehículo en la vía pública en estado de embriaguez. [2] En su alegato, el apelante adopta la teoría en la que el estado de embriaguez —para los efectos de un agente de la policía determinar si existen motivos fundados—, no puede surgir de las dos infracciones de la Ley de Tránsito, el olor a alcohol y el comportamiento de éste al bajarse del vehículo, sino que solamente pueden surgir luego de la prueba cinética del "intoxilizer". Ante ello, una vez sometido el caso, el apelante añadió que el testimonio que el agente Avilés ofreció como prueba del Ministerio Fiscal y en el cual éste relató todos los sucesos relativos a la detención del Sr. Torres, surgieron de un testimonio estereotipado.

No estamos de acuerdo con tales alegaciones. Es válida la detención que hizo el agente Avilés al observar al Sr. Torres manejar sin luces, cambiar de carril sin señales de luz, y por último, al detectar el olor a alcohol que éste expedía. Estas observaciones constituyen válidamente motivos fundados para haber creído que se estaba cometiendo un acto ilegal en su presencia. Como consecuencia de lo anterior, el agente Avilés pudo servirse de la facultad que se le reconoce en ley para detener al recurrido, pues su conducta estuvo fundamentada en la apreciación que haría una persona prudente y razonable en circunstancias similares.

En su cuarto y último señalamiento de error, el apelante alega que se le limitó su derecho a contrainterrogar sobre otras partes pertinentes de documentos presentados por el Ministerio Público. De autos surge que durante el contrainterrogatorio del agente Avilés, el abogado del apelante se aproximaba a inquirir sobre otras personas con las que dicho agente ha intervenido y cuyos nombres y circunstancias estaban en la bitácora admitida como prueba (E.N.P.P., p. 4). **[3]** Ante ello, el TPI cuestionó la pertinencia de tal información y el apelante indicó que era una declaración estereotipada. De autos no surge que el apelante pudiese probarle al TPI la pertinencia de tal línea de interrogatorio, y éste tampoco añade nada en el recurso que nos presenta. En adición, el apelante aduce que durante el contrainterrogatorio no se le "permitió ahondar más sobre la preparación de las soluciones que utiliza el químico del Departamento de Salud...", ya que éste se limitó a presentar las certificaciones que esta administración utiliza para calibrar el instrumento de prueba de alcohol por aliento, y no tuvo la oportunidad de interrogar a las personas que preparan las soluciones que se utilizan para calibrar dicho instrumento (Escrito del apelante, p. 9). **[4]** De autos surge que el químico, señor Gilberto Alexis Vicente Cruz, declaró extensamente sobre el funcionamiento operacional del "intoxilizer" y su calibración. Ante dicha declaración, el apelante no presentó prueba que impugnara el funcionamiento del "intoxilizer" o la calidad de la solución con la que se calibró. Tampoco solicitó la exclusión de las calibraciones certificadas por el Laboratorio de Salud Pública de Puerto Rico presentada por el Ministerio Fiscal.

Como se sabe, la Regla 4 de las de Evidencia, 32 L.P.R.A Ap. IV, R. 4, regula el efecto del error en la admisión de evidencia. En lo pertinente, la Regla dispone que no se dejará sin efecto la determinación de admisibilidad de alguna prueba, ni tampoco se revocará una sentencia por motivo de la admisión errónea de evidencia, a menos que se admitiera mediando la oportuna y correcta objeción, siempre que dicha admisión fuera factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita. En *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991), el Tribunal Supremo examinó el alcance de la referida Regla, y fue enfático al establecer que un tribunal apelativo debe considerar el efecto de la admisión de la prueba en la decisión apelada. Se considera que una prueba admitida constituye un factor decisivo o sustancial si "ésta pudo haber tenido una influencia, notable y determinante, en el veredicto, fallo, o sentencia que emitiera el juzgador de los hechos en el caso ante su consideración, fuera éste civil o criminal". *Pueblo v. Ruiz Bosch*, *supra*, a las págs. 786-87. Al examinar la actuación del foro apelado conforme a los parámetros de nuestro ordenamiento probatorio, resolvemos que no incurrió en error el tribunal al admitir la prueba objetada.

Centrado así la argumentación del apelante, de la totalidad de autos no se desprende que el TPI le haya limitado su derecho a contrainterrogar. Tampoco el apelante ha demostrado que Instancia haya actuado de forma parcial, prejuiciada o influenciada por alguna pasión que justifique que debamos intervenir con sus determinaciones y concluir que la prueba de cargo fuera floja, descarnada o estereotipada. El testimonio del agente Avilés no es irreal o improbable por lo que no se cometió el alegado error.

Finalmente, reiteramos la norma ampliamente reconocida de que los tribunales apelativos no intervendrán con la apreciación y adjudicación de credibilidad que haya realizado el juzgador de los hechos en una moción de supresión de evidencia a menos que se pruebe pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Meliá León*, 143 D.P.R. 708 (1997).

Examinada la situación de autos, no consideramos que el testimonio ofrecido por el agente pueda considerarse como irreal o improbable. Tampoco encontramos lagunas o ambigüedades en el testimonio que nos

lleven a sustituir el criterio del TPI por el nuestro. Por esta razón, no intervendremos con la apreciación de la prueba del juez de primera instancia, más aún cuando no se ha probado que existió pasión, prejuicio o parcialidad al aquilatar la misma.

## III

En mérito a lo expuesto, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 132

**1.** De autos surge que la prueba de alcoholemia fue realizada por el Agente Avilés luego de 20 minutos de la detención y que éste estaba autorizado y certificado por el Departamento de Salud para llevarla a cabo (E.N.P.P., Anejo 1, p. 2). Además, durante el juicio, el químico Gilberto A. Vicente Cruz testificó en cuanto a la correcta calibración del "intoxilizer".

**2.** En la Exposición Narrativa Presentada por las Partes, el apelante "acept[ó] que la policía tenía razón para detenerlo por lo de las luces" (E.N.P.P., p. 7).

**3.** De la Exposición Narrativa Presentada por las Partes surge que:

"Se le preguntó si todas las personas con las que intervenía se estaban cayendo ... y la Fiscal objetó porque no se estaba hablando de otras personas y el tribunal lo mantuvo. La defensa vuelve a preguntar: usted dice que el caballero se estaba cayendo, ¿ha ocurrido algún caso donde...? El agente contesta "negativo", no le puedo decir de otras personas porque yo intervine con él, yo le tengo que hablar de la persona con la que yo intervengo". El tribunal cuestiona cuál es la pertinencia, defensa indica que era una declaración esteriotipada donde todos tenían fuerte olor y se estaban cayendo y no podían mantenerse de pie al salir del auto. Tribunal indica que haga otra pregunta." (E.N.P.P., p. 7)

**4.** Con relación a esta alegación, de la Exposición Narrativa Presentada por las Partes, se transcribió lo siguiente:

"No se nos permitió ahondar más sobre la preparación de las soluciones que utiliza el químico del Departamento de Salud y lo único que logramos sacar en claro es que le dan unas soluciones que certifica el Departamento de Salud y las usa para verificar la calibración del instrumento, pero no participa en su preparación y se toman como correctas, ya que están certificadas. Es decir, no se presentó quienes deben estar presentes que son los que preparan las soluciones, ya que era testificar le dan unas soluciones, que no prepara y las usa para verificar el instrumento, eso lo hacen de otra forma los técnicos que lo verifican en cuanto a su función."
(E.N.P.P., p. 7)