EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR JUAN DÍAZ TORRES, acusado y apelante.

*Número:* CR-62-405    *Resuelto:* 30 de diciembre de 1963

*Elí B. Arroyo,* abogado del apelante; *J. B. Fernández Badillo,* Procurador General, y *Jenaro Marchand, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El apelante fue convicto del delito que consiste en conducir, bajo los efectos de bebidas embriagantes, un vehículo de motor; Sec. 5-801 de la Ley de Vehículos y Tránsito; 9 L.P.R.A. sec. 1041. Fue condenado a cumplir diez días de cárcel, y conforme lo exige la ley, su licencia de conductor le fue suspendida por el término de un año, a partir del día 15 de marzo de 1961, día en que se dictó la sentencia.

Señala los errores que a continuación numeramos y discutimos:

1. Que la antes citada Sec. 5-801 de la Ley es inconstitucional porque viola el derecho constitucional de las personas "contra ataques abusivos a su honra, reputación y a su vida privada o familiar." El planteamiento es frívolo. Nada hay en dicha sección que constituya tal ataque abusivo. En síntesis, todo lo que esa sección dispone es (a) que será ilegal que una persona que está bajo los efectos de bebidas embriagantes conduzca o haga funcionar un vehículo de motor, y (b) establece que en cualquier proceso criminal por infracción a la misma, la cantidad de alcohol existente en la sangre del acusado al tiempo de cometer la infracción, según surja dicha cantidad del análisis químico de su sangre, orina o

aliento, constituirá base para unas presunciones que dicha sección relaciona. Finalmente establece que la misma no se interpretará en el sentido de excluir la presentación de cualquier otra evidencia para probar el caso.

Yendo más allá de la Sec. 5-801, no puede sostenerse tampoco que la Ley de Vehículos y Tránsito infrinja el mencionado derecho constitucional contra ataques a la honra y reputación de las personas. Esa ley reglamenta el tránsito en nuestras vías públicas—función indispensable en cualquier comunidad moderna—e impone penalidades por sus infracciones. La sociedad tiene el derecho a exigir que quienes conducen vehículos de motor no estén ebrios. Como dijo el Tribunal Supremo de los Estados Unidos en *Breithaupt* v. *Abram*, 352 U.S. 432, 435 (1957), no hay nada "ofensivo" en extraerle una muestra de sangre a una persona bajo condiciones médicas satisfactorias. Continuó diciendo dicho Tribunal, a la pág. 436, que los exámenes de sangre hoy día son rutinarios; se hacen para ingresar al ejército, al solicitar licencias matrimoniales y muchos colegios y universidades lo requieren como requisito para la admisión de estudiantes.

Añadió el Tribunal, a la pág. 439, que frente al derecho individual de la inviolabilidad de la persona está el interés de la sociedad en la determinación científica de la embriaguez de los conductores, uno de los peligros mortales en la carretera. Refuerza el argumento, expresó el Tribunal, el hecho de que el examen de la sangre también puede establecer la inocencia del acusado, proveyendo así protección para las personas inocentes del delito de que se trata. También señaló el Tribunal (pág. 439) que como el derecho penal está en gran medida justificado por su función disuasiva, el derecho individual contra la intervención en la persona que representa el examen de la sangre, queda más que compensado por el valor disuasivo que representa el que el público en general esté consciente de que mediante esos exámenes se puede

constatar con mayor precisión el estado de embriaguez de una persona que mediante testimonios orales conflictivos.

■ Estas disposiciones estatutarias relativas a los exámenes de la sangre, aliento y orina para determinar el grado de embriaguez de los conductores se han generalizado en todas partes en donde los automóviles y el uso del licor han creado un problema de seguridad pública. Por lo menos veintiséis estados de los Estados Unidos ya tienen leyes parecidas a la nuestra sobre el particular. La Conferencia de Comisionados Sobre Leyes Estatales Uniformes (Conference Commissioners on Uniform State Laws) y la American Bar Association dieron su aprobación en el año 1957 a una Ley Uniforme de Exámenes Químicos Sobre Embriaguez (Uniform Chemical Tests for Intoxication Act). Para interesante información sobre la materia véase la introducción a dicha Ley Uniforme (Commissioner's Prefatory Note) en 9 U.L.A., Suplemento de 1962, pág. 48. La citada Ley Uniforme aparece en dicho suplemento, pág. 52 y sgtes. También hay un caudal de información y de citas de autoridades en el escolio 3, pág. 436 de *Breithaupt* v. *Abram*, supra. La constitucionalidad de dichas disposiciones legales ha sido definitivamente sostenida. Véase *Breithaupt* v. *Abram*, supra; *Blackford* v. *U.S.*, 247 F.2d 745 (1957); *U.S.* v. *Nesmith*, 121 F.Supp. 758 (1954); la *Anotación* en 25 A.L.R.2d 1407 (1952); los demás casos y autoridades citados en el escolio 4 de *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392 (1962); las fuentes anteriormente citadas en esta opinión y además Alm y Stefanson, *Chemical Tests for Intoxication: A Legal, Medical and Constitutional Survey*, 37 N.D. L. Rev. 212 (1961). En este extenso artículo los problemas constitucionales están discutidos en las págs. 232 y sgtes.

■ 2. Que dicha Sec. 5-801 es inconstitucional por comprender un asunto no expresado claramente en su título. Tampoco tiene mérito este planteamiento. Lo que la Constitución exige es que *el asunto*, o sea, el tema o la materia sobre

la cual la ley trata aparezca claramente expresada en su título.(¹) La Constitución no requiere que los detalles o los procedimientos estatuidos en las leyes aparezcan relacionados en sus títulos. Pretender eso sería absurdo; tal requerimiento tendrá como resultado que los títulos fuesen excesivamente largos y complicados y entonces serían inútiles. Ya hemos dicho que no se requiere que el título constituya un índice detallado del contenido de la ley, sino meramente que sea un hito indicador del asunto cubierto por la misma, *Pueblo* v. *Pérez*, 83 D.P.R. 228, 230 (1961); *Sunland Biscuit Co.* v. *Junta de Salario Mínimo*, 68 D.P.R. 371, 380 (1948).

El título de la Ley de Vehículos y Tránsito expresa claramente, entre otras cosas, que es una ley "para reglamentar el tránsito de vehículos y peatones" y añade al final dicha título, lo siguiente: ". . . y para imponer penalidades por la violación de las disposiciones de esta ley." Leyes, 1960, pág. 425. Proveer para el caso de conductores ebrios cae claramente dentro del asunto "reglamentar el tránsito de vehículos y peatones". No se cometió el error señalado.(²)

---

(¹)En su parte pertinente la Constitución de Puerto Rico, Art. III, Sec. 17, dispone: "No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título, . . ."

(²)La costumbre de hacer títulos de leyes excesivamente largos y detallados que parece haber tomado incremento en Puerto Rico hace aproximadamente dos décadas se debió, creemos, entre posiblemente varios factores, especialmente a dos: (a) el temor de una Legislatura que estaba llevando a cabo una amplia reforma social y económica de que sus leyes fuesen anuladas por meros defectos técnicos por una Judicatura presumiblemente conservadora y (b) la imitación del estilo de la legislación norteamericana, la cual tiende a pormenorizar tanto en los títulos como en los textos de las leyes en sí. Esto se explica, lo cual no quiere decir que se justifica, en esa legislación porque el derecho original de los Estados Unidos era casuístico y no estaban habituados al estilo amplio y abarcador de los códigos europeos. Compárese el texto terso, a pesar de sus defectos, de nuestro Código Civil con los estatutos norteamericanos y muchas de nuestras leyes recientes. Es un fenómeno interesante el que en el área del derecho común cuando se legisla se quiere excluir hasta el máximo la contribución judicial, de ahí el afán por incluir hasta los más mínimos detalles en los estatutos, y por el contrario, la legislación de los países de

3. Que la referida Sec. 5-801 es inconstitucional por privar al acusado del derecho a juicio por jurado. Dicha sección dispone que toda infracción a sus disposiciones se ventilará ante el Tribunal Superior por tribunal de derecho. La Sec. 5-802 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1042, establece las penalidades para las violaciones a la Sec. 5-801. Dispone que sus violaciones constituirán delito *menos grave* e impone penalidades de *cárcel*, las cuales varían según las distintas alternativas que dicha Sec. 5-802 contiene. La teoría del apelante es que, a pesar de los términos expresos de la Sec. 5-802 y de lo dispuesto en el Art. 14 del Código Penal, 33 L.P.R.A. sec. 35,([3]) el delito en cuestión, debido

---

tradición civilista está generalmente redactada en términos generales y cuenta con la labor judicial para su aplicación justa y racional a cada caso concreto. Paton, *Jurisprudence*, 1955, pág. 190; Puig Brutau, *La Jurisprudencia Como Fuente del Derecho*, pág. 137; Stone, Julius, *The Province and Function of Law*, 1961, pág. 434. Franklin, en 47 Harvard L. Rev., págs. 1367, 1384 y 1392, señala que mientras todo el Código Civil francés contiene aproximadamente 100,000 palabras el *Restatement* sobre contratos solamente, contiene como 300,000; y el *Restatement, Torts* consiste de 1,059 secciones en comparación con media docena de secciones que le dedican generalmente a esa materia los códigos civiles. Sobre la individualización de la norma en los casos específicos nos ocupamos en *Banchs v. Colón*, 89 D.P.R. 481 (1963), y allí citamos literatura sobre el particular.

Para ejemplos de títulos breves, que señalan adecuadamente el asunto de sus leyes y que a la vez responden a las mejores normas de redacción de estatutos, véanse los de las siguientes leyes: Ley de la Judicatura (1952), Ley de la Policía (1956), Ley Notarial (1956), Ley General de Corporaciones (1956), Código de Seguros (1957), Ley de la Propiedad Horizontal (1958) y Ley Municipal (1960). Aunque de naturaleza un poco distinta pueden también mencionarse como ejemplos de títulos breves y adecuados los de las Reglas de Procedimiento Civil (1958), y de las Reglas de Procedimiento Criminal (1963), y aunque aprobados bajo un régimen constitucional distinto al presente, también son títulos modelos de brevedad y claridad los de las siguientes leyes: Código Político, Código Civil, Ley Hipotecaria, Código Penal, Código de Enjuiciamiento Criminal y Código de Enjuiciamiento Civil.

([3]) Dicho Art. 14 lee como sigue: "Delito grave es un crimen castigado con la pena de muerte o de presidio. Delito menos grave comprende todos los demás delitos. Cuando un delito castigable con pena de presidio, apareja también la de multa o cárcel, a discreción del tribunal, se considerará menos grave, para todos los efectos, después de dictada sentencia imponiendo una pena que no fuere de presidio." Como se sabe, en Puerto Rico ya no existe la pena de muerte.

a sus "severas penalidades", debe ser considerado como un delito grave y no como uno menos grave. Las "severas penalidades" a que alude el apelante comienzan con un mínimo de diez días de cárcel y un máximo de un año y cuando como consecuencia de conducir un vehículo en estado de embriaguez se ocasionare daño corporal a una persona, el delito también será menos grave y la penalidad es cárcel por un término no menor de dos meses ni mayor de dos años. No estamos de acuerdo con el apelante en su concepto de severidad, especialmente tratándose de legislación que trata de defender las vidas de seres humanos y que es un esfuerzo por conjurar en parte una emergencia civil, *Pueblo* v. *Tribunal Superior*, 86 D.P.R. 834 (1962), (⁴) pero si lo estuviésemos tampoco le podríamos dar la razón ya que corresponde a la Asamblea Legislativa determinar cuáles delitos son graves y cuáles son menos grave. En este caso, como hemos visto, la Asamblea Legislativa hizo dicha determinación. Recuérdese que no solamente es facultad de los cuerpos legislativos el determinar la naturaleza de los delitos sino que corresponde a dichos cuerpos la creación de los mismos. *Nulla poena sine lege.*

El apelante no fue juzgado por un delito grave ni por un delito menos grave que al momento de aprobarse la Constitución conllevase el derecho a juicio por jurado. La Constitución dejó a la discreción de la Asamblea Legislativa el conceder o no juicio por jurado en los casos de delitos menos grave que al momento de aprobarse la Constitución la legislación vigente no concedía juicio por jurado. Éste es precisamente el caso de autos, un delito menos grave creado con posterioridad a la creación de la Constitución y para el cual la Asamblea Legislativa dispuso que se viese por tribunal de derecho. Para disponerlo así tenía perfecta facultad. Como dijimos en *Pueblo*

---

(⁴) Allí dijimos:

"No creemos que la urgente necesidad pública, creada por la ocurrencia de accidentes fatales en nuestras carreteras, necesite de una refinada exposición para demostrar su derecho a ser incluída en la lista de las emergencias civiles."

v. *Miranda*, 79 D.P.R. 710, 713–714 (1956), "Como indican claramente el informe de la Comisión de Carta de Derechos y los debates de la Convención Constituyente, la frase delito grave en dicha disposición constitucional no incluye ningún delito clasificado como menos grave (*misdemeanor*), por legislación aprobada antes de entrar en vigor la Constitución, en el cual no se concedía necesariamente el derecho a juicio por jurado. *Poco importa a este respecto la naturaleza del delito y las penas provistas por ley para el mismo.* Aquí las infracciones por las cuales se procesó al apelante fueron calificadas como delito menos grave (*misdemeanor*) en virtud de la Ley . . . Y específicamente dicha ley dispone que el juicio debe celebrarse por tribunal de derecho." (Subrayado nuestro.)

4. Que la Sec. 5-801 es inconstitucional por privar al acusado de la presunción de inocencia. Este planteamiento ya lo resolvimos adversamente a la posición que aquí toma el apelante en *Pueblo v. Tribunal Superior*, supra. A lo allí dicho podemos añadir lo siguiente. Lo que esa sección establece es que *dada determinada prueba*—los resultados del examen de la sangre—se llegará a determinadas presunciones. El acusado comienza gozando de la presunción de inocencia que la Constitución le garantiza, pero dicha presunción no es infinita; ante la prueba se desvanece. Como dijimos en *Pueblo v. Tribunal Superior*, 84 D.P.R. 392 (1962), se trata de un caso en que la evidencia objetiva—el resultado del examen clínico—sustituye la evidencia de opinión.

5. Que el tribunal de instancia erró al declarar culpable al acusado toda vez que la determinación de causa probable se hizo sin seguir los requisitos de ley. Argumenta el apelante que no surge "que magistrado alguno determinara causa probable para arrestar al acusado y ordenar su acusación." No tiene razón por los siguientes motivos: Del récord surge claramente, según declaró el policía Feliciano, que el acusado "fue llevado a la residencia del Juez Flores, quién lo

acusó de conducir en estado de embriaguez." (T.E. pág. 4.) El policía no es un perito en leyes y no podemos exigirle que distinga entre la acusación del fiscal y la determinación de causa probable del juez. Además al declarar no tiene que repetir textualmente las palabras de los preceptos legales. El propio apelante, en la pág. 14 de su alegato, al argumentar el error que en esta opinión lleva el número 7, expresa: "Del legajo de sentencia y de la transcripción de evidencia surge que (1) aparentemente el Juez Flores determinó causa probable; (2) que el Fiscal de Distrito Hon. Zoilo Dueño examinó los testigos", etc. No tenemos duda de que el magistrado determinó que había causa probable.

■ Además, el apelante renunció a este planteamiento al no levantarlo ante el tribunal de instancia, 34 L.P.R.A. sec. 1171; *Pueblo* v. *Pacheco*, 83 D.P.R. 526, 532 (1961); *Pueblo* v. *Montalvo*, 83 D.P.R. 727, 734 (1961); *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471, 477 (1961); *Jaca Hernández* v. *Delgado*, 82 D.P.R. 402, 414 (1960); *Pueblo* v. *Torres*, 81 D.P.R. 678, 683 (1959); *Pueblo* v. *Adorno*, 81 D.P.R. 518, 534 (1959); *Pueblo* v. *Fournier*, 80 D.P.R. 390, 405 (1958); *Pueblo* v. *Negrón*, 79 D.P.R. 296, 302 (1956); *Pueblo* v. *Santiago*, 78 D.P.R. 69, 73 (1955); *Pueblo* v. *Jiménez*, 78 D.P.R. 7, 11 (1955).

6. Que el tribunal de instancia erró al declarar culpable al acusado porque su arresto fue ilegal. Examinemos los hechos. Parte de la prueba que desfiló ante el tribunal a quo consistió de la declaración del policía Ángel L. Feliciano. En lo pertinente éste declaró como sigue:

"P. Allá para el 26 de noviembre de 1960 y en Río Piedras, Puerto Rico, ¿tuvo usted ocasión de intervenir con el referido acusado?

R. Sí, señor.

P. ¿Podría relatar en qué consistió su intervención?

R. Para esa fecha y a las siete de la mañana, patrullábamos el sector de la carretera número uno, de Caguas hacia Río Piedras. Cuando veníamos. . . .

P. A quién se refiere?

R. Al policía Tomás Díaz y yo. Nos pasó el automóvil 712-829.

P. ¿Dónde queda el Artemio Auto Parts?

R. A la salida de Río Piedras a Caguas. Pasó el automóvil 712-829, el cual manejaba este señor, nos pasó por el lado izquierdo. Cuando iba frente a nosotros, pudimos notar que el automóvil de este señor dio dos "zig-zags", chocando con la isleta que divide la carretera. Lo mandamos a detener en la Intersección 88. Ahí me bajé, le requerí la licencia y, entonces, se bajó del automóvil y me dio la licencia. Le pedí la licencia del vehículo, y al preguntarle si el automóvil era propiedad de él, nos dijo que no. Pude notar que le salía fuerte olor a licor. Caminé hacia la "patrol", y este señor caminó detrás de mí, teniendo que recostarse sobre la "patrol", porque no podía mantenerse en pie. Además, le requerí si me acompañaba al hospital para la toma de muestra de sangre, orina o saliva, a lo que él accedió. Hablaba incoherentemente, gago, mostraba la vista completamente rojiza y tenía que estar pegado a la guagua porque no podía mantenerse en pie. Le requerí que me acompañara al hospital, a lo que él accedió, donde el Doctor López le tomó la muestra de sangre." (T.E. págs. 3-4.)

El Tribunal Superior dio crédito a esa prueba y nosotros no tenemos razón alguna para intervenir con la apreciación que de la misma hizo dicho Tribunal.

■ El arresto fue legal porque el acusado fue arrestado por el policía al éste verlo conducir en estado de embriaguez, lo cual constituye un delito público. Un policía puede arrestar sin orden de arresto cuando se ha cometido o se ha intentado cometer un delito público en su presencia. Hasta un ciudadano particular puede arrestar en esas circunstancias. 34 L.P.R.A. secs. 243 y 244; Reglas de Procedimiento Criminal 11 y 12. Cuando un conductor conduce un automóvil en la forma anteriormente descrita y es observado por un policía, éste tiene facultad en ley para arrestar al conductor por estar el mismo cometiendo un delito en su presencia. *Pueblo v. Vargas*, 80 D.P.R. 296, 298 (1958); *Pueblo v. Santiago*, 78 D.P.R. 659, 667 (1955) y *Pueblo v. Soto*, 77 D.P.R. 206, 211-212 (1954).

Además de conducir en estado de embriaguez el acusado probablemente también estaba infringiendo la Sec. 5-201 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 871, que declara delito público el conducir de manera descuidada y atolondrada, o sin el debido cuidado y circunspección, o de manera que ponga en peligro vidas y propiedades. Ante la situación descrita en su declaración por el policía Feliciano, éste estaba justificado en proceder al arresto del acusado.

■ 7. Que el tribunal de instancia erró al declarar culpable al acusado toda vez que la acusación está basada en el testimonio de testigos examinados por un Fiscal distinto al que formuló acusación. Argumenta el apelante que "del legajo de sentencia y de la transcripción de evidencia surge que (1) aparentemente el Juez Flores determinó causa probable; (2) que el Fiscal de Distrito, Hon. Zoilo Dueño, examinó a los testigos y (3) que el Fiscal Auxiliar Hon. Roberto de Jesús Cintrón formuló la acusación basada en el testimonio de testigos examinados ante el Hon. Fiscal Zoilo Dueño creyendo solemnemente que existe justa causa para presentarla." Este planteamiento ya lo consideramos y lo resolvimos adversamente a la posición del apelante en *Pueblo* v. *Seda,* 82 D.P.R. 719, 724–725 (1961) en donde dijimos:

"A nuestro juicio, lo que es realmente importante es que la acusación se base en declaraciones juradas, pero no es requisito indispensable que las declaraciones se juramenten ante el mismo fiscal que a su vez presenta y jura la acusación. [Citas omitidas]. La pretensión del apelante descansa exclusivamente en una interpretación literal y forzada del texto legal, que nos vemos obligados a rechazar por conducir a un resultado que no puede haber sido el que se intentó por el legislador. Como acertadamente sugiere el Procurador General en su alegato presentado ante este Tribunal, el fiscal en dicho artículo se refiere al concepto genérico de representante del ministerio público."

La disposición que cita el apelante, 34 L.P.R.A. sec. 127 contiene un formulario y el mismo no es mandatorio en su

forma literal. Esa sección, en su comienzo, expresa: "La acusación *puede* ser *sustancialmente* en la forma siguiente:" (Subrayado nuestro) y a continuación aparece impreso el formulario. Nótese que dice "puede" y no "debe". Claramente el formulario allí sugerido podía utilizarse como también podía utilizarse cualquier otro que cumpliese sustancialmente con la ley.

■ Además, el asunto es renunciable y el apelante lo renunció al no levantarlo en el tribunal de instancia. Ya en *Pueblo* v. *Alonso*, 25 D.P.R. 205, 206 (1917) habíamos expresado: "[Y]a hemos dicho repetidas veces que la falta de expresión de que los testigos han sido examinados por el Fiscal no constituye un defecto que perjudique sustancialmente los derechos del acusado y que semejante omisión debe alegarse antes en la corte inferior para que pueda ser considerada en grado de apelación."

■ 8. El Tribunal erró al declarar culpable al acusado toda vez que no se le leyó la denuncia. De los autos surge lo siguiente: "Al acto de la lectura de la acusación compareció el acusado en persona y asistido de su abogado . . . se dio por leída la acusación, entregándosele copia al acusado. Alegó ser inocente." Al acto del juicio también compareció el acusado en persona y asistido de su abogado. Reiteró su alegación de inocente y se practicó la prueba. Como se ve de lo anterior el acusado renunció a la lectura de la acusación, estando presente su abogado. Ésa fue una renuncia consciente e inteligente. De todas maneras, en el acto de la lectura de la acusación se le entregó copia de la misma. Eso fue el 24 de enero de 1961. La vista del juicio se celebró el 15 de marzo de 1961. No cabe duda que el acusado y su abogado tuvieron amplio tiempo y oportunidad para leer la acusación, y en vista de la defensa de que fue objeto el acusado no dudamos que la leyeron. En nada se perjudicó al acusado. La renuncia que

hizo de la lectura oral está dentro de ley, *Pueblo* v. *Colón*, 70 D.P.R. 792, 797 (1950).(5)

■ 9. Que el reglamento sobre la toma de la muestra de sangre es nulo. Argumenta el apelante en apoyo de la alegada nulidad que para la adopción de dicho reglamento por el Secretario de Salud no se siguió el procedimiento estatuido por la Ley Núm. 81 de 14 de marzo de 1912. No tiene razón el apelante. Esa Ley 81 se refería al extinto Servicio de Sanidad que había sido creado en el 1911 (Ley Núm. 68 de 9 de marzo de 1911) y que dejó de existir en el 1917, al crearse el Departamento de Salud por la Carta Orgánica de ese año. La vigente Ley de Automóviles y Tránsito, una ley del año 1960, en forma expresa y clara faculta al Secretario de Salud, cargo creado por la Constitución de Puerto Rico en el 1952, para adoptar el reglamento en cuestión. Dice en lo pertinente la Sec. 5-803(d) de esa ley, 9 L.P.R.A. sec. 1043(d):

"Se faculta al Secretario de Salud para reglamentar la forma y sitios en que habrán de tomarse, envasarse y analizarse las muestras de sangre y de orina, así como aquellos otros procedimientos afines al análisis químico, pero con sujeción a lo dispuesto en los incisos (f), (g) y (h) de esta sección."

Esa ley de 1960, la de Vehículos y Tránsito, luego de facultar al Secretario para adoptar ese reglamento, nada tenía que detallar sobre el procedimiento para hacerlo porque en los libros está la Ley Sobre Reglamentos de 1958, Ley Núm. 112 de 30 de junio de 1957, 3 L.P.R.A. secs. 1041–1059, la cual contiene el procedimiento para la adopción y promulgación de reglamentos por las oficinas y departamentos de la Rama Ejecutiva del Gobierno. Producto de esa Ley es la publicación *Reglas y Reglamentos de Puerto Rico*.

---

(5)Bajo las nuevas Reglas de Procedimiento Criminal también es renunciable la lectura de la acusación, pero se le entregará copia de la misma al acusado. Regla 52.

■ 10. Que en todo caso la prueba demuestra que hubo una desviación sustancial del procedimiento señalado por el reglamento. Del récord surge que no hubo tal desviación sustancial, *Pueblo* v. *Echevarría*, 87 D.P.R. 208 (1963), pero es innecesario discutir en detalle el punto porque, independientemente del análisis químico de la sangre, el resto de la prueba justifica el fallo condenatorio del Tribunal Superior.

Una cosa queremos aclarar, sin embargo. Parece darle mucha importancia el apelante a que el acusado "no se alteró, ni se puso malcriado." El acusado no fue convicto por perturbación de la paz, ni por resistencia a funcionarios públicos, Arts. 368 y 137 del Código Penal, 33 L.P.R.A. secs. 1439 y 495. No es necesario probar que el acusado se puso malcriado para probar que estaba ebrio. Es de conocimiento general que unos borrachos se ponen muy finos, otros pendencieros; unos muy alegres mientras que a otros les da por llorar. A otros sencillamente les da sueño y se quedan dormidos y silenciosos. La ley no penaliza el conducir un vehículo mientras se está ebrio porque el conductor se ponga malcriado, sino porque al conducir un vehículo de motor en ese estado pone en grave riesgo su vida, la de los que le puedan acompañar en el vehículo, y la de otras personas que estén en las calles, en las aceras, en los parques y en los balcones.

*No se cometieron los errores señalados. La sentencia apelada será confirmada.*