La Juez Asociada Señora Rodríguez Rodríguez,
emitió la opinión del Tribunal.
El Gobierno Municipal de Barceloneta (Municipio) cuestionó en este recurso la facultad del Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico (Consejo) para emitir, motu proprio, una orden para paralizar unos trabajos de mantenimiento y limpieza en un canal de escorrentía que efectuaba el Municipio. El Municipio adujo que el Consejo se excedió en sus facultades al paralizar dichas labores, ya que su ley orgánica no le facultaba para actuar así.
El foro apelativo intermedio sostuvo que el Municipio no agotó los procedimientos administrativos ante el Consejo, por lo que declinó revisar la determinación administrativa. El municipio peticionario rechazó esa conclusión y sostuvo que no al no existir facultad en ley para que el Consejo pudiera emitir dicha orden, ésta era nula, por lo que se dictó sin jurisdicción para ello; como resultado, no tenía que agotar los remedios administrativos.
Trabada así la controversia, pasamos a exponer el trasfondo fáctico del caso.
I
En la primera semana de noviembre de 2003, el Municipio se encontraba realizando unas obras públicas de mantenimiento y limpieza de cauces pluviales. Entre los lugares que limpiaba se encontraba el canal de escorrentía localizado al oeste del establecimiento comercial conocido como Prime Outlets. Este canal discurre en dirección norte, paralelo a la carretera estatal 140.
El canal se encontraba obstruido por chatarra abandonada, así como otros desperdicios sólidos, incluyendo unos *219 treinta a cuarenta postes de hormigón que obstruían el canal. Los trabajos de limpieza consistían en la remoción de los escombros y del sedimento, y en la tala de la vegetación circundante al canal que obstruía el flujo normal del agua. El Municipio alegó que la obstrucción del canal producía inundaciones en las comunidades aledañas, por lo que era imprescindible su limpieza.
El 6 de noviembre de 2003, el arqueólogo Carlos Pérez Merced le notificó al Municipio un boleto de falta administrativa, imponiendo una multa de $10,000, bajo el fundamento de que los trabajos que desempeñaba el Municipio habían impactado un área arqueológica reconocida y, además, que el Municipio no había notificado al Consejo del hallazgo de materiales arqueológicos, como requiere la Ley Núm. 112 de 20 de julio de 1988, según enmendada, 18 L.P.R.A. see. 1551 et seq. (Ley Núm. 112).(1) Se le ordenó al Municipio que en un término no mayor de quince días presentara ante el Consejo los planos, los permisos y el memorial explicativo que le autorizaban a llevar a cabo dichos trabajos. En esa misma fecha también le fue notificada una orden de paralización de los trabajos que se efectuaban. (2)
El 12 de noviembre de 2003, el Consejo notificó al Municipio un nuevo boleto de falta administrativa por alegadamente haber hecho caso omiso tanto a la orden de presentar los planos y permisos correspondientes, así como a la orden de paralización.(3) Inconforme con la acción del Consejo, el 14 de noviembre de 2003 el Municipio presentó una solicitud de reconsideración de la orden de paralización emitida. Indicó en ella que era imprescindible que ésta se dejara sin efecto, ya que los trabajos de limpieza del *220 canal eran necesarios para aliviar el problema de inundaciones de áreas circundantes que se generaba como consecuencia de la obstrucción del canal pluvial.
El 21 de noviembre, el Municipio presentó una nueva moción ante el Consejo para notificar que retiraba la moción de reconsideración presentada, porque entendía que el Consejo se había excedido en sus facultades al emitir la orden de paralización.
El 24 de noviembre, el Consejo emitió una resolución en la que modificó su orden de paralización para indicar lo siguiente:
Vista la solicitud de reconsideración de orden de paralización, presentada por la parte querellada, la misma fue evaluada por los Miembros del Consejo.
Evaluada dicha solicitud, el cuerpo Consejal no tiene objeción a lo planteado y solicitado siempre y cuando se obtenga la autorización del dueño de los terrenos y se acredite que las personas a las que les solicita el permiso son los dueños regístrales de la porción a ser afectada. Apéndice, pág. 61.
En esta resolución nada se señaló sobre la moción para retirar la solicitud de reconsideración.
Así las cosas, el 8 de diciembre de 2003 el Municipio acudió ante el Tribunal de Apelaciones del dictamen del Consejo de paralizar las obras de mantenimiento y limpieza del canal pluvial. En su escrito, cuestionó la facultad del Consejo para dictar órdenes de paralización. Argumentó que la Sec. 11 de la Ley Núm. 112 (18 L.P.R.A. see. 1561) disponía que para procurar una orden de paralización el Consejo tenía que acudir al Tribunal de Primera Instancia para que fuera éste quien la emitiera. Argüyó que la letra de la ley era clara y no admitía una interpretación en contrario.
El 18 de diciembre de 2003, el Consejo se opuso al recurso instado por el Municipio fundamentado, principalmente, en que éste tenía que agotar los procedimientos administrativos disponibles de la Ley Núm. 112 y en la Ley de Procedimiento Administrativo Uniforme del Estado Li *221 bre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada (L.P.A.U.).(4) Adujo, además, que tanto la Ley Núm. 112 como el Reglamento sobre Multas Administrativas promulgado a tenor de ésta, en su See. 9.04, facultaba al Consejo a ordenar dicha paralización para hacer cumplir el mandato de la Ley Núm. 112.
Mediante una sentencia de 16 de marzo de 2004, el foro apelativo intermedio confirmó la determinación del Consejo. Determinó que el Consejo no había emitido una resolución final sobre la controversia, por lo que declinaba revisar el recurso en esa etapa de los procedimientos. Indicó, además, que la orden de paralización no ocasionó un daño irreparable al Municipio y que no estaba claro si, en efecto, el Consejo carecía de jurisdicción para emitir un remedio de esa naturaleza.
Inconforme, el Municipio recurrió ante este Tribunal, vía certiorari, de dicha sentencia. En su escrito señaló la comisión de tres errores.(5) El 25 de junio de 2004 denegamos la expedición del auto de certiorari presentado; en reconsideración, lo expedimos. Contando con la comparecencia de las partes, estamos en posición de resolver y así lo hacemos.
*222 II
La Ley Núm. 112 declaró de utilidad pública y patrimonio del Pueblo de Puerto Rico a los yacimientos, objetos, artefactos, documentos o materiales arqueológicos, reconociendo así su valor incalculable, no tan sólo para la investigación y el análisis en el campo de la antropología, sino también para nuestra herencia cultural e histórica como pueblo caribeño. La Exposición de Motivos de la Ley Núm. 112 claramente establece que el “fin primordial [de la ley] es estimular ... y asegurar el inventario científico y la protección de esa parte de nuestra herencia cultural e histórica. Con ello, se podrá estimular y facilitar la investigación antropológica y se atiende en forma satisfactoria y halagadora a las demandas de la cultura y del espíritu”. 1988 Leyes de Puerto Rico 497-498.
Para hacer efectivo el mandato de ley, el estatuto dispuso la creación del Consejo, que está adscrito al Instituto de Cultura Puertorriqueña y tiene como objetivo “proteger y custodiar estos recursos arqueológicos y a la vez fomentar el inventario científico y el estudio de estos valores arqueológicos en armonía con la política pública del Estado Libre Asociado de Puerto Rico”. See. 2 de la Ley Núm. 112 (18 L.P.R.A. see. 1552).
La Ley Núm. 112 enumeró las potestades del Consejo, entre las cuales destaca la facultad para imponer multas administrativas, así como la de demandar y ser demandada. 18 L.P.R.A. sees. 1563 y 1554(j). Esta ley le reconoció al Consejo amplios poderes para implementar la política pública establecida por ésta, indicando que este organismo podrá “ejercer todas las acciones necesarias para lograr el eficaz cumplimiento de los propósitos de este capítulo”. 18 L.P.R.A. sec. 1554(d). A su vez, le facultó para “ejercer todos los poderes que sean incidentales y necesarios para el cabal desempeño de las responsabilidades y debe *223 res que por ley se le asignan”. (Énfasis nuestro.) 18 L.P.R.A. sec. 1554(k).
La controversia en este caso gira en torno a la facultad conferida en la Sec. 11 de la Ley Núm. 112, donde se dispone:
Cuando se realicen obras de construcción, excavación, ex-tracción o movimiento de tierra sin la autorización requerida en la Sec. 1560(6) de este título, o se violen las condiciones impuestas en la autorización concedida!,] el Consejo podrá recurrir al Tribunal de Primera Instancia para que emita una resolución ordenando la paralización o suspensión de las obras de que se trate, hasta tanto se cumpla con los requisitos de este capítulo. El tribunal podrá obligar a demoler lo hecho y a restaurar o reconstruir el material, estructura o lugar si la obra realizada modifica o destruye la autenticidad o el valor del contenido arqueológico. Si el daño fuere irreparable, el responsable resarcirá al Pueblo de Puerto Rico por los daños causados.
El Municipio entiende que para obtener una orden de paralización de una obra, el Consejo tiene que acudir a los tribunales para que éstos la emitan, si así lo entiende procedente. Por el contrario, el Consejo arguye que, como parte de sus poderes incidentales y necesarios para cumplir con el mandato de la Ley Núm. 112, está facultado para emitir motu proprio las órdenes de paralización y evitar así daños mayores a los yacimientos arqueológicos.
*224 Además, nos indicó que el lenguaje de la Sec. 11 de la Ley Núm. 112, supra, habla en términos potestativos no mandatarios, al indicar que el “Consejo podrá recurrir al Tribunal de Primera Instancia”. (Énfasis nuestro.) A base de lo cual concluye: “Toda vez que el verbo utilizado por el legislador, podrá, es uno de carácter optativo, dando así la libertad para hacer o no hacer.” (7) Es decir, es discrecional del Consejo acudir o no al tribunal en búsqueda de una orden de paralización, y cuando opte por no hacerlo, puede emitirla motu proprio. Finalmente, indicó que la interpretación de un ente administrativo de su estatuto habilitador goza de gran deferencia, por lo que debemos acoger la interpretación propuesta por el Consejo.
III
Definida bajo estos términos la controversia ante nuestra consideración, debemos auscultar con mayor detenimiento el texto mismo de la sección en controversia, así como el historial legislativo de la Ley Núm. 112 en búsqueda de una respuesta.
A. La amplia delegación de facultades cuasilegislativas y cuasijudiciales a las agencias administrativas es una de las características sobresalientes del estado moderno. El arsenal administrativo contemporáneo requiere de la delegación de estos poderes, pues son los que permiten hacer efectivas y viables las funciones encomendadas al organismo administrativo.
La delegación de poderes cuasi judiciales incluye no sólo la potestad de resolver controversias, sino también la de dictar remedios. La orden de paralización u orden de cesar y desistir es uno de los remedios que le pueden ser delegados a las agencias administrativas. El profesor Schwartz nos señala:
*225 Administrative agencies may also be given injunctive power, though the name “injunction” is not used. The cease and desist orders that may be issued by most regulatory agencies are the administrative equivalents of prohibitory injunctions. (Enfasis nuestro.) B. Schwartz, Administrative Law 3d, Boston, Ed. Little, Brown & Co., 1991, pág. 93. Véase, también, K.C. Davis, Administrative Law Text 3d, Nueva York, West Publishing, 1972, págs. 211-212.
Al repasar las leyes orgánicas de varias agencias administrativas del Estado Libre Asociado de Puerto Rico, encontramos tal facultad delegada expresamente. Así ocurre, por ejemplo, con el Art. 2(9) de la Ley Orgánica de la Junta de Planificación de Puerto Rico (23 L.P.R.A. sec. 62j(9)); el Art. 25 de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A sec. 71x; Ley sobre Política Pública Ambiental, 12 L.P.R.A. see. 1131(22); la Ley de Telecomunicaciones de Puerto Rico de 1996 (27 L.P.R.A. see. 267f(b)(3)), y el Art. 4Z(b) de la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 L.P.R.A. sec. 341Z(b). Como ya vimos, la Ley Núm. 112 también provee para la emisión de una orden de paralización. La pregunta ahora es a quién le corresponde la facultad de dictarla.
B. Una lectura integrada de las disposiciones de la Ley Núm. 112, específicamente de las Secs. 10 y 11, supra, nos provee la respuesta.
La Sec. 10 de la Ley Núm. 112, supra, describe las acciones que constituyen infracciones a la ley. En específico, se dispone que no se puede iniciar o continuar una obra de construcción o reconstrucción, u otros trabajos, en lugares en que previamente se ha identificado que yacen materiales arqueológicos, salvo que se obtenga previamente una autorización del Consejo. Por otro lado, cuando en cualquier otro lugar, y mientras se lleven a cabo unas obras, se descubran artefactos arqueológicos, procede que se notifique de inmediato al Consejo y no se continúe con los trabajos. Finalmente, la sección dispone qué una viola *226 ción de lo allí dispuesto constituye un delito grave. 18 L.P.R.A. see. 1560.
La Sec. 11 de la Ley Núm. 112, supra, por su parte, dispone específicamente que cuando se realicen obras de construcción, excavación, extracción o movimiento de tierra sin la autorización que exige la mencionada See. 10 de la ley, “el Consejo podrá recurrir al Tribunal de Primera Instancia para que emita una resolución ordenando la paralización o suspensión de las obras de que se trate”. (Énfasis nuestro.) La sección también provee los remedios que el propio tribunal tiene disponible ante una violación de la Ley Núm. 112.
Hay que destacar que esta sección es la única sección en la ley que hace referencia a la paralización o suspensión de unas obras que se efectúan en violación al mandato de la Ley Núm. 112. Y como se puede apreciar, el lenguaje apunta a que quien la puede emitir es el tribunal, y no el Consejo. Esta parece ser la lectura más razonable de dicha sección.
El Consejo arguye, como apuntamos, que como la ley utiliza el vocablo “podrá” ello es indicativo de que es discrecional acudir o no al tribunal para solicitar dicho remedio y, cuando se opte por no acudir, el Consejo entonces queda facultado para, motu proprio, emitirla. Esta lectura se revela forzada y algo atropellada. La tesis del Consejo nos plantea varios inconvenientes. En primer lugar, aun cuando la primera parte de la aseveración es correcta, es decir, que será discreción del Consejo acudir o no al tribunal en búsqueda de una orden de paralización, la conclusión a que llega no es atinada. La discrecionalidad que se reconoce no es a que el Consejo pueda emitir por sí una orden de paralización, sino que éste puede, enfrentado con unas acciones que violen la Ley Núm. 112, escoger de entre sus poderes delegados la acción remedial que estime más adecuada. Así, puede optar por imponer una multa, de *227 mandar en el tribunal, presentar una querella criminal o solicitar del tribunal que expida una orden de paralización.
Por otro lado, aunque la regla general es que los términos permisibles como “podrá” deben interpretarse como que conceden discreción, y que los términos mandatarios como “deberá” deben interpretarse como que ordenan algo de forma concluyente —e.g., Capó v. A. Hartman & Cía, 57 D.P.R. 196, 200 (1940); Pueblo v. Díaz Torres, 89 D.P.R. 720, 732 (1963); Boneta et al., Ex parte, 39 D.P.R. 154, 166 (1929); Srio. de Justicia v. Tribunal Superior, 95 D.P.R. 158, 161 (1967)— hemos dispuesto que cabe interpretarlos indistintamente si de esa forma se logra cumplir con el propósito del estatuto. Espasas Dairy, Inc. v. J.S.M., 94 D.P.R. 816, 826 (1967). En este caso, “podrá” no tiene el alcance pretendido; se refiere más bien a que sólo procede la orden de paralización cuando la expida el tribunal. Sólo con esta interpretación hacemos cumplir el propósito de la ley.
Reiteradamente hemos señalado que el objetivo de la interpretación estatutaria es poner en vigor y hacer efectiva la intención del legislador, por lo que nuestra interpretación debe propender a hacer eficaz el objetivo perseguido por el legislador. Departamento de Hacienda v. Telefónica, 164 D.P.R. 195 (2005). Cuando el lenguaje es claro e inequívoco, “el texto de la ley es la expresión por excelencia de la intención legislativa”. Pérez v. Mun. de Lares, 155 D.P.R. 697 (2001). En este caso, como vimos, no tan sólo es claro el texto de la ley sino, como veremos también, lo es su historial legislativo.
IV
En 1985 se presentaron tres proyectos de ley con el propósito de crear un organismo administrativo para salvaguardar los yacimientos arqueológicos terrestres en Puerto Rico, a saber: el P. de la C. 8 Ira Sesión Ordinaria, lOma *228 Asamblea Legislativa;(8) el P. del S. 68, Ira Sesión Ordinaria, lOma Asamblea Legislativa,(9) y finalmente, el P. de la C. 574, 4ta Sesión Ordinaria, lOma Asamblea Legislativa,(10) que se convirtió en la Ley Núm. 112. En todos los proyectos se proveía para la expedición de las órdenes de paralización. El P. de la C. 8,(11) contenía el lenguaje siguiente: “[c]uando se realicen obras sin la autorización aquí requerida o se violen las condiciones impuestas en la autorización concedida, la Comisión podrá, mediante orden judicial, ordenar la paralización de un proyecto hasta que se cumplan con los requisitos de esta ley”.(12) (Enfasis nuestro.)
Por su parte, el P. del S. 68(13) contenía un lenguaje distinto, con el que específicamente facultaba a la Junta a emitir dichas órdenes. La sección pertinente disponía: “[l\a Junta podrá expedir órdenes provisionales de paralización de trabajos, obras, procesos de construcción, reconstrucción, excavación, movimiento de tierras o cualquier otro, para que se tomen medidas preventivas o de control necesarias para cumplir con los propósitos de la ley.” (14) (Énfasis nuestro.) Vemos entonces que ambas cámaras legislati *229 vas abordaban este asunto desde perspectivas distintas. El Senado interesaba otorgarle al Consejo dicha facultad ex-presamente, mientras que la Cámara le confería la facultad al tribunal.
Durante el debate en el Senado sobre el P. del S. 68, el 24 de junio de 1985, el senador Fas Alzamora propuso que se enmendara la sección.(15) La enmienda propuesta disponía lo siguiente: “[e]l Instituto de Cultura o la Junta podrá solicitar ante el organismo pertinente la paralización de las actividades antes mencionadas hasta tanto se cumpla con los requisitos de esta ley."(16) (Enfasis nuestro.) La enmienda del senador Faz Alzamora asemejaba el proyecto en el Senado al texto del de la Cámara.
Posteriormente, los proyectos antes mencionados se sustituyeron por el P. de la C. 574, el cual finalmente culminó en la Ley Núm. 112. En este proyecto, el lenguaje que se incluyó inicialmente sobre las órdenes de paralización fue muy similar al lenguaje que contenía el P. de la C. 8 sobre éstas. A saber:
Cuando se realicen obras sin la autorización aquí requerida o se violen las condiciones impuestas en la autorización concedida, la Comisión podrá, mediante orden judicial, ordenar la paralización de un proyecto hasta tanto se cumplan con los requisitos de esta ley.(17) (Énfasis nuestro.)
Una vez en el Senado, se enmendó nuevamente dicha sección para que dispusiera: “El Consejo podrá recurrir al Tribunal Superior”; así enmendada, quedó finalmente aprobada y se convirtió en ley.(18)
A la luz del historial legislativo antes expuesto, no nos *230 cabe la menor duda que la intención del legislador fue facultar sólo a los tribunales a dictar órdenes de paralización. Este fue un tema debatido ampliamente por la Rama Legislativa, de ahí los innumerables cambios introducidos una y otra vez sobre esta disposición. Finalmente, prevaleció aquella versión que dejaba en manos de los tribunales la facultad de emitir órdenes de paralización. No nos corresponde pasar juicio sobre la sabiduría del esquema favorecido por el legislador. Nuestra función se circunscribe a, mediante nuestra interpretación del estatuto, hacer viable aquello que originalmente quiso establecer el legislador.
Antes de finalizar, cabe destacar que la Ley Núm. 10 de 7 de agosto de 1987 (18 L.RR.A. see. 1501 et seq.), aprobada con anterioridad a la Ley Núm. 112, dispuso para la creación del Consejo para la Conservación y Estudio de los Sitios y Recursos Arqueológicos Subacuáticos, adscrito también al Instituto de Cultura Puertorriqueña y con funciones similares a las que después se le otorgarían al Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico. Esta ley, sin embargo, sí facultó expresamente al Consejo para la Conservación y Estudio de los Sitios y Recursos Arqueológicos Subacuáticos a emitir motu proprio órdenes de cese y desista o de paralización. Así, en su Art. 8(g) se dispuso expresamente: “El Consejo tendrá los siguientes deberes y poderes: ... (g) Expedir, previa notificación y vistas, órdenes de hacer o no hacer, cesar y, desistir .... El Consejo podrá comparecer ante el Tribunal de Primera Instancia para solicitar que dicho tribunal ordene el cumplimento de cualquier orden o citación expedida por el Consejo.” (Énfasis nuestro.) 18 L.P.R.A. see. 1508(g). Aun cuando esta ley estaba vigente al momento de la aprobación de la ley que hoy nos ocupa, y a pesar que tratan de asuntos casi idénticos, el legislador no tuvo a bien autorizar al Consejo en la Ley Núm. 112 a emitir por sí órdenes de paralización. Debemos respetar la voluntad *231 del legislador y no podemos, como nos invita el Consejo, a desatender la clara intención legislativa.
Resolvemos, por lo tanto, a base de la discusión que antecede, que la ley habilitadora del Consejo no le autorizó a emitir, motu proprio, las órdenes de paralización. Para ello, el Consejo tiene que solicitar el auxilio de los tribunales. Le corresponde a la Asamblea Legislativa modificar el estatuto para que se provea tal facultad con las salvaguardas correspondientes.
La orden emitida por el Consejo en el caso de referencia fue a todas luces nula y su actuación fue ultra vires. El Municipio, en su consecuencia, no tenía que agotar los remedios administrativos, ya que el ente administrativo actuó al margen de sus facultades delegadas.(19) E.g., Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001); J. Exam. Tec. Méd. v. Elías et al., 144 D.P.R. 483 (1997); Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993); Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347 (1988).

Procede revocar la determinación del Tribunal de Apelaciones y dejar sin efecto la orden de paralización emitida contra el Municipio de Barceloneta.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez concurrió con el resultado sin opinión escrita.

 Apéndice de la Petición de certiorari, pág. 47.

 íd., pág. 46.

 íd., pág. 49.

 3 L.P.R.A. see. 2101 eí seq.

 Los errores señalados por el Municipio de Barceloneta fueron los siguientes:
1. “Cometió error el Tribunal de Apelaciones al resolver que en la situación de hechos del caso el Municipio de Barceloneta debía agotar los remedios administrativos ante el Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico antes de recurrir al foro judicial, a pesar de que se trata de una situación clara en que el organismo administrativo actuó de forma ultra vires al dictar una orden decretando la paralización de unas obras públicas de mantenimiento que realizaba el Gobierno Municipal de Barceloneta ya que la Asamblea Legislativa no le delegó el poder de dictar órdenes de paralización.”
2. “Procedía la revisión de la resolución administrativa ante el Tribunal de Apelaciones no obstante el hecho de que se trataba de una resolución interlocutoria. Por tratarse de una orden ultra vires, el Municipio de Barceloneta podía preterir el trámite administrativo y recurrir directamente en revisión judicial.”
3. “Cometió error el Tribunal de Apelaciones al denegar el auto solicitado ya que el Consejo para la Protección del Patrimonio Arqueológico Terrestre de Puerto Rico carece de autoridad legal para emitir órdenes de paralización.” Petición de certiorari, págs. 5-6.

 La Sec. 10 de la Ley Núm. 112 de 20 de julio de 1988 (18 L.P.R.A. see. 1560) dispone como sigue:

“Obras- Movimiento de tierras; autorización requerida

“A partir de la fecha de aprobación de est[a] ley, no se podrá iniciar ni continuar obra de construcción o reconstrucción, ni trabajos de trabajos [sic] de excavación, extracción o movimiento de tierras en lugar alguno del que haya documentación previa o indicios fidedignos de presencia de material arqueológico, a menos que se obtenga la autorización del Consejo.
“Cuando la obra de construcción o reconstrucción, de excavación, extracción o movimiento de tierras sea en un lugar del cual no haya documentación previa o indicios fidedignos de presencia de material arqueológico y, sin embargo, luego de iniciadas las mismas se descubra cualquier material arqueológico, el contratista o el dueño de la obra, según sea el caso, deberá suspender la misma y notificar al Consejo dentro de las veinticuatro (24) horas siguientes a dicho hallazgo, a fin de poder obtener la autorización correspondiente para la continuación de la obra o trabajos de que se trate.”

 Réplica a la Petición de certiorari, pág. 17.

 Presentado el 14 de enero de 1985.

 Presentado el 5 de febrero de 1985.

 Presentado el 11 de agosto de 1985.

 Este proyecto fue referido a las Comisiones de Recursos Naturales y Calidad Ambiental, de lo Jurídico Penal y de Hacienda, y su texto fue aprobado en votación final por el Senado, 16 de enero de 1985, lOma Asamblea Legislativa, Ira Sesión Ordinaria, pág. 12.

 Dicha sección sólo sufrió una enmienda: se sustituyó la palabra “Comisión” por “Consejo”.

 Este proyecto fue referido a las Comisiones de Desarrollo Social y Cultural, de Hacienda y de Gobierno Estatal, y su texto aprobado en votación final por el Senado, 16 de enero de 1986, lOma Asamblea Legislativa Ira Sesión Ordinaria, pág. 11.

 En el primer Informe Conjunto del Senado sobre el P. del S. 68, se hicieron unas enmiendas a dicha sección. Finalmente disponía que el Instituto de Cultura o la Junta “podrá ordenar la paralización de las acciones antes mencionadas hasta tanto se cumpla con los requisitos de esta ley”. Informe de las Comisiones de Desarrollo Social y Cultural de Hacienda y Gobierno Estatal, 6 de mayo de 1985, lOma Asamblea Legislativa, Ira Sesión Ordinaria, pág. 6. Posteriormente se sustituyó la palabra “Junta” por “Consejo”.

 Diario de Sesiones del P. del S. 68, 24 de junio de 1985, pág. 420.

 íd., pág. 417.

 Proyecto referido de las Comisiones de Recursos Naturales y Calidad Ambiental, y de Gobierno, y su texto fue aprobado finalmente por la Cámara, 7 de abril de 1986, lOma Asamblea Legislativa, 3ra Sesión Extraordinaria, pág. 10.

 Diario de Sesiones, Procedimientos y Debates de la Asamblea Legislativa, Senado, sobre el P. de la C. 574, 23 de mayo de 1988, lOma Asamblea Legislativa, 3ra Sesión Extraordinaria, págs. 2056 y 2061.

 Debe quedar meridianamente claro que no pasamos juicio sobre la corrección y la cuantía de la multa impuesta al Municipio de Barceloneta, ya que este asunto no se trajo ante nuestra consideración.
Tampoco expresamos criterio alguno sobre si el Municipio de Barceloneta, advertido de que en el lugar donde trabajaba yacían materiales arqueológicos, podía, en virtud de lo dispuesto en la Sec. 10 de la Ley Núm. 112, supra, continuar sus labores de limpieza.
El asunto en este caso es de carácter procesal, sobre cuándo y cómo procede una orden paralización según la Ley Núm. 112, supra.