ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPCECIAL

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Apelados<br><br>v.<br><br>**DANIEL ALBERTO MARTÍNEZ MARTÍNEZ**<br><br>Apelante | KLAN202300779 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Coamo**<br><br>Criminal Núm.: **B2TR202200112**<br><br>Sobre:<br>Infr. Art. 7.02 Ley 22-2000 (Ley 22 de Vehículos y Tránsito de PR) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Díaz Rivera y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Mediante *Moción de Apelación* presentada el 5 de septiembre de 2023 comparece ante nos Daniel Alberto Martínez Martínez (Martínez Martínez o Apelante). Nos solicita que revisemos la *Sentencia* de 5 de septiembre de 2023, dictada por el Tribunal de Primera Instancia, Sala Superior de Coamo (TPI).[2] Por medio de la *Sentencia,* el TPI le impuso lo siguiente a Martínez Martínez: una multa de $2,400; sesenta (60) días de servicio comunitario; la revocación indefinida de la licencia de conducir; la confiscación del vehículo de motor que conducía al momento de ser intervenido; y, cuatro (4) meses de cárcel mandatorios por ser reincidente de conducir bajo estado de embriaguez por tercera vez.[3] Esto por haber

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Alicia Álvarez Esnard.
[2] Apéndice de la *Moción de Apelación*, Anejo I. Archivada y notificada el 7 de septiembre de 2023.
[3] *Íd.*

sido declarado culpable de violentar el art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, (9 LPRA sec. 5001 *et seq.*) (Ley de Tránsito).

Por las razones que expresamos a continuación, *confirmamos* la *Sentencia* de referencia.

I.

El 15 de septiembre de 2022, el Apelante fue intervenido por conducir un vehículo de motor bajo los efectos de bebidas embriagantes.[4] Luego de hacerle las advertencias de ley, el Apelante, libre y voluntariamente, se sometió a un análisis de aliento realizado por el Agente Melvin Alvarado Jiménez de la Policía de Puerto Rico. *Íd.* Este arrojó un volumen de alcohol de la sangre de 0.164%, en exceso al límite de 0.08% que establece la Ley de Tránsito. Durante la vista, el TPI tomó conocimiento judicial de dos sentencias previas por violaciones al art. 7.02 de la Ley de Tránsito, *supra*, en contra del Apelante y sobre las objeciones de la defensa.[5]

Ante preguntas de la Fiscal, el Agente Félix Arvelo Santiago, quien intervino con el Apelante la noche de los sucesos, contestó que interceptó al Apelante por este utilizar "luces de alta intensidad en sitios alumbrados [...]" y que la luz era "bastante fuerte que molestaba [...] al vehículo que estaba conduciendo en dirección contraria".[6] Esto en violación al art. 14.05 (d) de la Ley de Tránsito, *supra*, que dispone que:

> **Queda prohibido en las vías públicas alumbradas el uso de luces de alta intensidad**, incluyendo el uso de barras de luces LED (Light Emitting Diode) o HID (High Intensity Discharge). Esta prohibición no será aplicable a aquellos vehículos de motor cuyo manufacturero incluya las mencionadas luces como un aditamento de fábrica. Toda persona que viole las disposiciones de este inciso incurrirá en una falta administrativa y será sancionada con una multa de doscientos cincuenta (250) dólares. (Énfasis nuestro).

---

[4] *Íd.*, *Transcripción de la Vista celebrada el 6 de junio del 2023*, pág. 5.
[5] *Íd.*, págs. 12-18.
[6] *Íd.*, pág. 25.

El Agente Arvelo Santiago testificó que luego de acercarse a la ventana del Apelante, este expidió un "fuerte olor a alcohol", lo cual le dio motivo fundado para creer que estaba conduciendo bajo el efecto de bebidas embriagantes.[7] De forma libre y voluntaria, el Apelante cooperó con los agentes Arvelo Santiago y Alvarado Jiménez, y fue trasladado a la División de Patrullas y Carreteras de Aibonito, donde el Agente Alvarado Jiménez le administró la prueba de aliento con la máquina "Intoxilyzer 9000".[8] El resultado arrojó 0.164% de alcohol en el organismo.

Luego de oír los testimonios de los agentes, analizar la prueba testifical y tomar en consideración el testimonio estipulado del químico, el TPI declaró al Apelante "culpable".[9] La representación legal del Apelante solicitó reconsideración en sala, y el TPI se reiteró en su determinación.[10]

Inconforme, el Apelante radicó una *Moción* ante este Tribunal, señalando los siguientes errores:

**PRIMERO: INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO, SALA SUPERIOR DE COAMO, CUANDO DECLARÓ CULPABLE Y CONVICTO AL ACUSADO-APELANTE DEL DELITO IMPUTADO, A PESAR DE QUE LA PRUEBA DE CARGO NO ESTABLECIÓ SU CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE Y FUNDADA EN VIOLACIÓN AL DERECHO CONSTITUCIONAL DEL DEBIDO PROCESO DE LEY.**

**SEGUNDO: INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO, SALA SUPERIOR DE COAMO, AL NO ENTENDER QUE EL ARTÍCULO 14.05 (D) DE LA LEY DE VEHÍCULOS Y TRÁNSITO ES [UNA] QUE ADOLECE DE VAGUEDAD POR SER DISCRIMINATORIO Y SELECTIVO EN CONTRA DE UNOS SECTORES DE LA POBLACIÓN CON MENOS CAPACIDAD ECONÓMICA.**

**TERCERO: INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO, SALA SUPERIOR DE COAMO, AL TOMAR CONOCIMIENTO JUDICIAL DE NÚMEROS DE CASOS PARA IMPUTAR REINCIDENCIA, SIN EXAMINARSE EL EXPEDIENTE JUDICIAL Y CORROBORAR SI DICHAS SENTENCIAS NO HABÍAN SIDO APELADAS.**

---

[7] *Íd.*, pág. 26.
[8] *Íd.*, págs. 32-33.
[9] *Íd.*, pág. 110.
[10] *Íd.*

**CUARTO: INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO, SALA SUPERIOR DE COAMO, AL DETERMINAR LA INAPLICABILIDAD DE LA PENA DE RESTRICCIÓN DOMICILIARIA E IMPONERLE AL APELANTE UNA PENA DE RECLUSIÓN CARCELARIA.**

**QUINTO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO, SALA SUPERIOR DE COAMO, AL ENTENDER QUE EL HÁLITO ALCOHÓLICO ES POR SÍ SOLO UN MOTIVO FUNDADO SUFICIENTE PARA EXPONER A UNA PRUEBA ANTE EL [INTOXILYZER] 9000.**

Con los hechos esbozados y los errores señalados, procedemos a discutir el derecho aplicable.

II.

A.

"[L]a sentencia que dicta un Juez de Primera Instancia es el producto final de un activo y complejo proceso forense". L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones* en *Perspectivas en la práctica apelativa*, San Juan, Ediciones SITUM, 2018, pág. 101. Estas gozan de una presunción de corrección y la parte que impugne una determinación del Tribunal de Primera Instancia tiene el peso de la prueba para refutarla. *Íd.*

Esta deferencia merece mayor respeto cuando estamos ante la revisión de un caso criminal. "En los casos criminales, la regla general dispone que al evaluar el fallo o veredicto recaído, en la medida en que los Jueces y Juezas de instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba presentada, su apreciación merecerá gran deferencia [...]". L. Rivera Román, *op. cit.*, pág. 106.

Nuestro Tribunal Supremo ha reconocido que el juzgador de los hechos en primera instancia está en especial ventaja al hacer determinaciones de hechos y aquilatar la prueba testifical y las adjudicaciones de credibilidad. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. De Jesús Mercado*, 188 DPR 467, 477-

478 (2013); *Pueblo v. Rosario Reyes*, 138 DPR 591, 598 (1995). "[C]omo norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro". *Pueblo v. Rivera Maldonado, supra*, pág. 373.

"Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro **únicamente** cuando existen circunstancias extraordinarias en las que **se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho**". *Íd*. (Énfasis nuestro).

Un tribunal actúa con pasión, prejuicio o parcialidad cuando está "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios:

> (1) [E]l juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente. *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

"Por último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble'". *Pueblo v. Rivera Maldonado, supra*, pág. 374. (citando a *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002)).

En el caso de autos, el Apelante nos ha solicitado revocar la determinación del TPI por declararlo culpable, a pesar de que la prueba de cargo no estableció su culpabilidad más allá de duda razonable y fundada en violación al derecho constitucional del debido proceso de ley. No le asiste la razón.

El TPI tuvo la oportunidad de evaluar toda la evidencia presentada, incluyendo los testimonios de los agentes de la Policía que intervinieron con el Apelante. Debemos conferirle a la juzgadora de los hechos debida deferencia a la apreciación de los hechos y la prueba por estar en posición idónea para llevar a cabo esa función. *McConnell v. Palau*, 161 DPR 734 (2004). Es la juzgadora en instancia que tuvo la oportunidad de ver a los testigos declarar, escuchar sus testimonios vivos y evaluar sus *demeanors. Sepúlveda v. Depto. de Salud*, 145 DPR 560 (1998).

No vemos en el testimonio de los agentes o en el expediente razón para concluir que el TPI actuó con pasión, prejuicio o parcialidad. Tampoco hubo craso abuso de discreción o error manifiesto o de derecho. Al contrario, la transcripción sostiene la determinación hecha. El Tribunal Supremo ha resuelto que **el hecho de que un conductor expida olor a alcohol sumado a un resultado positivo en cualquier prueba suministrada a esos efectos es evidencia suficiente para establecer su estado de embriaguez**. *Pueblo v. Eliza Colón*, 95 DPR 670 (1968). Tanto el testimonio del Agente Arvelo Santiago, como el resultado de la prueba realizada por el Intoxilyzer 9000 sostienen dicha determinación.

B.

Nuestro ordenamiento jurídico no puede tolerar estatutos que adolecen de vaguedad. Las cláusulas de debido proceso de ley exigen que los estatutos sean claros y precisos. *Pueblo v. Hernández Colón*,

118 DPR 891, 901 (1987). La necesidad de precisión es indispensable en lo atinente a los estatutos penales.

> Primero, una ley penal que sufre del defecto de ser vaga o ambigua podría ser empleada para castigar al inocente, al no proveerle un aviso adecuado de cuál es la conducta que prohíbe. La ley penal debe proveer a toda persona de inteligencia promedio una guía adecuada que le aperciba de antemano que su conducta está prohibida. [...] Segundo, una ley penal ambigua promueve su implantación de forma arbitraria y discriminatoria, pues delega impermisiblemente en los funcionarios del orden público la determinación del alcance de la legislación. [...] Tercero, una ley ambigua puede cohibir el disfrute de las libertades protegidas por la Constitución. *Íd.*, págs. 901-902.

La vaguedad ocurre "cuando una determinada palabra o expresión carece de parámetros y contenido preciso, de forma que más de una alternativa sea posible a la misma vez". Jorge M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, Editorial InterJuris, San Juan, 2019, pág. 58. Una ley adolece de vaguedad si: "(1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar; (2) se presta a la aplicación arbitraria y discriminatoria, [e] (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución". *Pueblo v. APS Healthcare of P.R.,* 175 DPR 368, 378 (2009).

Ahora bien, el hecho de que una ley penal esté sujeta a interpretación no implica su invalidez. *Boys and Girls Club v. Srio. De Hacienda,* 179 DPR 746, 755 (2010). "Así las cosas, la función de los tribunales es interpretar y aplicar la ley penal, y no crearla ni cambiarla". *Íd.*, pág. 756.

El art. 14.05 (d) de la Ley de Tránsito, *supra,* dispone que:

> Queda prohibido en las vías públicas alumbradas el uso de luces de alta intensidad, incluyendo el uso de barras de luces LED (Light Emitting Diode) o HID (High Intensity Discharge). Esta prohibición no será aplicable a aquellos vehículos de motor cuyo manufacturero incluya las mencionadas luces como un aditamento de fábrica.

Este artículo no adolece de vaguedad. Una lectura sencilla del estatuto comunica su intención: prevenir el uso de luces de alta intensidad que hieran la vista o les causen desorientación a otros conductores en las carreteras. El artículo usa como ejemplo las barras de luces LED o HID, pero estos no son taxativos. Por lo tanto, no se cometió el segundo error.

C.

La Regla 201 de las Reglas de Evidencia de Puerto Rico, (32 LPRA Ap. VI, R. 201) dispone los aspectos pertinentes al conocimiento judicial de hechos adjudicativos. El efecto de tomar conocimiento judicial de un hecho es que el hecho "[e]s aceptado como cierto sin necesidad de que la persona obligada presente evidencia de su veracidad". *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253, 276–277 (2010). El inciso B de la R. 201 de Evidencia, *supra*, dispone que:

> (B) El tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque:
> (1) **es de conocimiento general dentro de la jurisdicción territorial del Tribunal**, o
> (2) **es susceptible de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada**. (Énfasis nuestro).

"Uno de los casos más comunes de conocimiento bajo este inciso es el de los archivos y documentos de la rama judicial". R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 4ta ed. rev., Ediciones SITUM, Inc., San Juan, 2015, pág. 139. El Tribunal Supremo ha resuelto que se puede tomar conocimiento judicial de una sentencia de condena y de las sentencias anteriores del condenado para establecer que es un delincuente habitual. *Íd.*; *Archevali Schuck v. ELA,* 110 DPR 767 (1981); *Pueblo v. Feliciano Hernández,* 113 DPR 371 (1972).

En el caso de autos, el TPI actuó dentro de los márgenes de la Regla 201 de Evidencia al tomar conocimiento judicial de las dos

sentencias previas. Es el deber de la parte oponente demostrar mediante prueba, que existe controversia sobre la veracidad del hecho. En el caso ante nos, el Apelante no lo hizo. Por lo tanto, no se cometió el tercer error.

D.

El art. 7.04 de la Ley de Tránsito, *supra*, dispone las penalidades por violaciones a los arts. 7.01, 7.02 y 7.03 de la misma. Esta dispone que:

> (a) Toda persona que viole lo dispuesto en los Artículos 7.01, 7.02 o 7.03 de esta Ley incurrirá en delito menos grave. [...]
> (b) **Si el nivel o concentración de alcohol en la sangre es de ocho centésimas del uno por ciento (0.08%) o más**; o dos centésimas del uno por ciento (0.02%) o más en casos de personas entre los dieciocho (18) y veinte (20) años de edad, inclusive, conductores de camiones, motocicletas, ómnibus escolares, vehículos pesados de servicio público y vehículos pesados de motor, o con alguna concentración de alcohol en la sangre en caso de menores de dieciocho (18) años de edad, **y la persona fuere convicta de violar lo dispuesto en los Artículos 7.01, 7.02 o 7.03 de esta Ley, será sancionada de la siguiente manera**:
>> [...]
>> (3) **Por la tercera convicción** y subsiguientes, con pena de multa no menor de dos mil (2,000) dólares ni mayor de cinco mil (5,000) dólares más cincuenta (50) dólares por cada centésima adicional sobre el límite de concentración de alcohol establecidas por ley **y cárcel por un término no menor de sesenta (60) días ni mayor de seis (6) meses** y pena de restitución, de ser aplicable. Además, como parte de la sentencia, el tribunal le ordenará prestar servicios comunitarios por un periodo no menor de sesenta (60) días y se le revocará el privilegio de la licencia de conducir de forma indefinida. *Íd.* (Énfasis nuestro).

Cuando es la tercera vez que una persona es convicta al amparo del art. 7.01, 7.02 o 7.03 de la Ley de Tránsito, el tribunal no tiene discreción al momento de imponer la sentencia. La condena de cárcel por un término no menor de sesenta (60) días ni mayor de seis (6) meses es obligatoria, en adición a las otras penas contempladas por el art. 7.04 (b) (3).

El Estado logró demostrar que el Apelante había sido convicto por conducir en estado de embriaguez dos veces anteriores. En

consecuencia, el TPI no tenía discreción al imponer la sentencia de cárcel. Solo tenía discreción sobre el tiempo de dicha sentencia. En consecuencia, no se cometió el cuarto error.

E.

El hálito alcohólico no es suficiente para establecer que se ha violado el art. 7.02 de la Ley de Tránsito. *Pueblo v. Toro Rosas*, 89 DPR 169, 175 (1963); *Pueblo v. Zalduondo Fontánez*, 89 DPR 64, 67 (1963). "[H]emos rechazado la suficiencia del aliento alcohólico, **por sí solo**, para establecer la inculpación". *Pueblo v. Toro Rosas, supra*, pág. 175. (Énfasis nuestro). Sin embargo, el hálito sí es suficiente para causar duda razonable en la mente de un agente de la Policía para someter a una persona a una prueba de embriaguez. *Íd.*

En el caso de autos, contrario a los casos de *Pueblo v. Toro Rosas, Íd.*, y *Pueblo v. Zalduondo Fontánez, supra*, el hálito de alcohol no es la única prueba que establece la culpa del Apelante. El hálito de alcohol fue lo que motivó a los agentes de la Policía a someter al Apelante a la prueba del Intoxilyzer 9000. En consecuencia, no se cometió el quinto error.

III.

Por los fundamentos que preceden, *confirmamos* la *Sentencia* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones